327 Mass. 225                                                           225

General Accident Fire & Life Assurance Corp. Ltd. *v.* Brow.

GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORPORA-
TION, LIMITED *vs.* GEORGE F. BROW, JUNIOR, & others.

Suffolk.    November 8, 1950. — March 19, 1951.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & COUNIHAN, JJ.

*Way,* "Ways of the Commonwealth," "Way laid out under authority of
   statute." *Insurance,* Motor vehicle liability insurance. *Housing.*
   *Municipal Corporations,* Housing.

A street, not established as a public way under G. L. (Ter. Ed.) c. 82 but
   provided by a town and used as part of a veterans' housing develop-
   ment conducted by the town on its land under St. 1946, c. 372, was a
   "way laid out under authority of statute" within G. L. (Ter. Ed.)
   c. 90, § 1, and one of the "ways of the commonwealth" within a policy
   of compulsory motor vehicle liability insurance as defined in c. 90,
   § 34A, even if the development was conducted under § 4 of the 1946
   statute rather than under § 6 thereof.

BILL IN EQUITY, filed in the Superior Court on April 28,
1949.

The suit was heard by *Morton,* J.

*P. S. Ratzkoff,* for the plaintiff.

*W. S. Monahan,* for the defendants Cicchini.

COUNIHAN, J.  This is a bill in equity under G. L. (Ter.
Ed.) c. 231A, as inserted by St. 1945, c. 582, § 1, by an in-
surer, seeking a determination of its obligations under a
compulsory motor vehicle liability policy issued to Brow,
one of the defendants, under G. L. (Ter. Ed.) c. 90, § 34A,
as amended.  The other defendants were made parties be-
cause of an accident in which the motor vehicle covered by
the policy was involved.  The accident happened on B Street,
Union Village, a veterans' housing development, in Brain-
tree, on October 18, 1948.

The only issue is whether or not B Street is a way within
the meaning of G. L. (Ter. Ed.) c. 90, § 1.

The judge made a finding of material facts in which he found that B Street was such a way, and entered a decree accordingly. From this decree the plaintiff appealed. The evidence is reported and from it we may draw such inferences as may be warranted in addition to the findings of the judge.

We find that Union Village is a veterans' housing development built on land of Braintree and by the town sometime in July, 1946, by virtue of St. 1946, c. 372, as amended, effective May 23, 1946, parts of which are quoted below.[1]

The main street of this development is Village Avenue, and from it run four streets called A, B, C, and D, all laid out and provided by the town in connection with the development. None of these streets was laid out or ever accepted by the town under G. L. (Ter. Ed.) c. 82. B Street is about one hundred feet long and fifteen feet wide, and two houses have been built on each side of it. Its surface is of a hard tar composition, and sewer, water, and gas pipes

---

[1] "Section 4. During the present emergency a city or town may raise, appropriate and expend money and take such other action as is suitable and necessary for the purpose of providing shelter for veterans who are inhabitants of such city or town by any or all of the following methods: . . . (d) By purchasing, leasing or acquiring by gift or by taking by eminent domain one or more tracts of land which are entirely or almost entirely unoccupied by buildings, *preparing such tracts for occupancy as herein provided*, and permitting veterans to occupy such tracts with dwelling units of a temporary nature, such as portable or pre-fabricated houses, cabins, huts or trailers; or by itself providing such dwelling units of a temporary nature by causing them to be constructed or by acquiring them through purchase, lease, gift or grant wherever they may be found, causing them to be transported to the tracts so acquired and to be set up and made ready for occupancy. Dwelling units of a temporary nature when provided by a city or town may consist of separate apartments in a building designed to contain two or more dwelling units. Reasonable rates shall be charged for occupancy of land, buildings or other structures under this paragraph. (e) By using any real estate, which it has acquired by foreclosure of tax titles or in any other way and which is not devoted to and required by any other public use, for any of the purposes set forth in paragraphs (c) and (d) of this section" (emphasis supplied).

"Section 6. Subject to the provisions of section seven, a city or town may also during the present emergency, raise, appropriate and expend money and take such other action as is suitable and necessary for the purpose of providing shelter for veterans who are inhabitants of such city or town, by purchasing or acquiring by gift or by taking by eminent domain one or more tracts of land of sufficient size for a housing development, or by using any such tract to which it holds title and which is not devoted to and required by any other public use, subdividing such tracts into parcels of adequate size for house lots, *laying out and providing or causing to be provided ways, public and private, and other public utilities for the use of the development, to such extent as it deems necessary or advisable* . . ." (emphasis supplied).

have been placed in it by the town. Street lights have been installed on Village Avenue. From the erection of the houses in this development in 1946 to the date of the accident all of the streets have been used constantly by pleasure and commercial motor vehicles. Parking areas are provided on each of the streets, and the general public has had access to the streets for any purpose for which public ways in the Commonwealth are customarily used by the public.

There was no error in the action of the judge.

Under § 34A of c. 90 the motor vehicle liability policy covers the operation of a motor vehicle upon the *ways* of the Commonwealth. In § 1 of c. 90 a way is defined as any *public highway* or *private way* laid out under authority of statute.

This veterans' housing development was provided by the town by virtue of St. 1946, c. 372, § 4, or § 6. From the record we are unable to determine exactly under which section of the statute this development was built, but we assume in favor of the plaintiff that it was under § 4. By § 4 towns were authorized to provide temporary shelter for veterans by several methods of which the following is here relevant: "(d) By purchasing, leasing or acquiring . . . one or more tracts of land . . . *preparing such tracts for occupancy* . . . and permitting veterans to occupy such tracts with dwelling units of a temporary nature . . ." (emphasis supplied). Section 6 provides so far as here material that a town may expend money and take such other action as is suitable and necessary for the purpose of providing permanent shelter for veterans by acquiring one or more tracts of land suitable for a housing development, subdividing such tracts into parcels of adequate size for house lots, *"laying out and providing or causing to be provided ways, public and private, and other public utilities for the use of the development, to such extent as it deems necessary or advisable"* (emphasis supplied).

It is true that § 4 contains no provisions similar to that contained in § 6 expressly authorizing a town to lay out and provide ways public or private in connection with veterans'

housing developments. We are of opinion, however, that the language of § 4, which authorizes a town to prepare for occupancy tracts of land acquired under this section for temporary veterans' .housing, by implication necessarily authorizes a town to lay out and provide ways, public or private, to provide suitable access to the dwelling units erected on such tracts of land. It would appear therefore that whether B Street was laid out and provided under either § 4 or § 6 is of little consequence. In any event it was a way, public or private, we need not decide which for the purposes of this case, laid out under authority of statute and therefore within the meaning of c. 90, § 1. Indeed it would seem that the plaintiff recognizes this when it says in its brief, "The definition of 'way' in that section [c. 90, § 1] includes and extends to ways which are not technically public ways. That is inherent in the very language of § 1 itself, which defines 'way' as including in addition to 'any public highway' . . . [any] 'private way laid out under authority of statute . . . .' It is clear, however, from the language of § 1 of c. 90, the legislative intent in enacting the compulsory automobile insurance law and the decisions of this court that the expression 'ways of the commonwealth' was meant to include in addition to public ways only certain familiar and well-recognized categories of ways, not technically public highways, but so closely approximating public ways, being public in every respect except for name; that they were practically indistinguishable from public ways."

From the facts hereinbefore found and recited above we are of opinion that B Street comes within one of these defined categories. See *Opinion of the Justices*, 313 Mass. 779, 784–785.

We are fortified in this belief by what has been said many times by this court that the purpose or primary object of the compulsory motor vehicle liability insurance statute is not to protect the insured from loss but to compensate persons injured through the operation of motor vehicles. Its real design is to protect the public. *Rose* v. *Franklin Surety Co.* 281 .Mass. 538, 540. *Wheeler* v. *O'Connell*, 297 Mass.

549, 553. *Service Mutual Liability Ins. Co.* v. *Aronofsky*, 308 Mass. 249, 252. See *Opinion of the Justices*, 251 Mass. 569. "It is a remedial statute and is to be construed liberally to suppress the mischief intended to be put down and to advance the remedy which it was intended to afford." *O'Roak* v. *Lloyds Casualty Co.* 285 Mass. 532, 536. *Caccavo* v. *Kearney*, 286 Mass. 480, 484.

To say that one injured by an automobile on B Street, a way laid out and provided by Braintree in connection with a suitable development for veterans' housing, could not be given the protection of a compulsory motor vehicle liability policy, would certainly be not to advance but to retard the remedy which the statute was intended to afford. In view of the development of so many housing projects in our Commonwealth, both veterans' and otherwise, any result contrary to that which we have arrived at would nullify the beneficent objects of c. 90, § 34A. It is to be understood that nothing we have said herein has any application to questions which may arise under the provisions of G. L. (Ter. Ed.) c. 82, c. 83, or c. 84, or to the obligations of municipalities under any of these statutes which may involve different principles of law from those in issue here.

*Decree affirmed with costs.*