PERCY O'ROAK *vs.* LLOYDS CASUALTY COMPANY & others.

Suffolk.    May 12, 1933. — March 26, 1934.

Present: RUGG, C.J., PIERCE, WAIT, FIELD, & LUMMUS, JJ.

*Insurance,* Motor vehicle liability, "Nonwaiver agreement" between insurer and insured. *Waiver. Estoppel. Statute,* Construction. *Words,* "Person responsible."

An insurance company, which issued a policy of compulsory motor vehicle liability insurance and subsequently conducted the defence of an action for personal injuries against an operator of the automobile covered by the policy after the operator had signed a "nonwaiver agreement" to the effect that the company disclaimed liability and did not waive any rights or defences by conducting the defence of the action, was not estopped thereafter to contend that it was not liable to the injured person in a suit in equity by him under G. L. (Ter. Ed.) c. 214, § 3 (10), to reach and apply the company's liability under the policy to the satisfaction of a judgment obtained by him in such action, it appearing that neither the insured nor the operator was misled by the conduct of the company.

It *seems* that the statutes pertaining to compulsory motor vehicle liability insurance do not establish a standard form of policy, although policies of such insurance are subject to approval or disapproval by

the commissioner of insurance and must contain the substance of the provisions required by those statutes.

The statutes pertaining to compulsory motor vehicle liability insurance and other related forms of security are remedial and are to be construed liberally.

A "person responsible for the operation of the insured's motor vehicle with his . . . consent" within the meaning of G. L. (Ter. Ed.) c. 90, § 34A, is one who acquires possession of the motor vehicle with the consent of the insured and is answerable to him for its proper use in accordance with the terms of the bailment, irrespective of whether the bailee after acquiring possession observes or disregards such terms, as distinguished from one who takes and uses the motor vehicle without the consent or authority of the insured; the quoted words do not require consent by the insured to a particular mode of operation or his consent at any particular moment during the bailment.

Where the owner of an automobile covered by a policy of compulsory motor vehicle liability insurance permitted another to take it for use for the other's purposes in an evening, stating to him at the time such permission was given that he must return it not later than a certain hour that evening; the bailee did not return it before the hour stated; and an accident involving personal injuries to a third person resulted from the bailee's negligent operation of it early in the following morning, the bailee at the time of the accident was a "person responsible for the operation of the . . . motor vehicle with . . . [the insured's] consent" within the meaning of said § 34A; and, after the injured person had recovered judgment for such injuries against the bailee, he could maintain a suit against the insurer under G. L. (Ter. Ed.) c. 214, § 3 (10).

BILL IN EQUITY, filed in the Superior Court with a writ in trustee process dated July 1, 1932, and described in the opinion.

The suit was heard by *Goldberg*, J. The evidence was reported. The judge found that the nonwaiver agreement mentioned in the opinion was signed by the defendant McGuinness on May 5, 1932, and that the action for personal injuries against him was tried thereafter. Other material findings by the judge are stated in the opinion. By order of the judge, a decree dismissing the bill was entered. The plaintiff appealed.

*J. H. Cinamon*, (*S. E. Seegel* with him,) for the plaintiff.

*G. B. Rowell*, for the defendants.

RUGG, C.J. This is a suit in equity under G. L. (Ter. Ed.) c. 175, §§ 112, 113, and c. 214, § 3 (10), to enforce the liability of the defendant Lloyds Casualty Company (here-

after called the insurer) under a policy issued by it pursuant to the compulsory motor vehicle insurance law. G. L. (Ter. Ed.) c. 90, §§ 34A–34J. The trial judge made findings and rulings, and ordered entered a decree dismissing the bill. The evidence is reported pursuant to G. L. (Ter. Ed.) c. 214, § 24. The plaintiff's appeal brings the case here.

Findings of fact, in substance, are that the defendant Mack was the owner of a motor vehicle which was insured by the insurer. The defendant McGuinness was an employee of Mack. Shortly before nine o'clock on the evening of November 27, 1931, Mack and McGuinness, together with two others, were in the motor vehicle in front of a theatre. Mack said to McGuinness that he with a friend was going to the theatre, that McGuinness could take and use the motor vehicle for the purpose of giving a girl a ride until 10:30 or 11 P.M., and that he must be sure to have the motor vehicle back in front of the theatre not later than 11 P.M. McGuinness drove the motor vehicle away and did not return it. Some time in the early morning of November 28, 1931, McGuinness, while driving the motor vehicle in Somerville, was in an accident involving the plaintiff. For personal injuries then received through the negligence of McGuinness, the plaintiff recovered judgment against him, which is unsatisfied and which the plaintiff seeks to enforce against the insurer by this suit. The trial judge found and ruled that McGuinness while operating the motor vehicle was not at any time an agent, employee or servant of Mack and that he was operating the motor vehicle solely and exclusively on business of his own; and further found and ruled that at the time of the accident McGuinness was not operating the motor vehicle with the express or implied consent of Mack but was operating it at that time contrary to the express direction and wishes of Mack.

So far as these are findings of fact they must be accepted as true. They are supported by evidence and are not plainly wrong. *Martell* v. *Dorey*, 235 Mass. 35, 40. They form the basis of this decision.

The insurer, pursuant to the obligation imposed by its policy of insurance, appeared in defence of the action brought

by the plaintiff against McGuinness, but McGuinness signed a nonwaiver agreement whereby he agreed that the insurer disclaimed liability and did not waive any rights or defences by conducting the defence of that action. The trial judge found that neither McGuinness nor Mack was misled by the conduct of the insurer. His ruling that the insurer was not thereby estopped from contending that it was not liable to the plaintiff was right. *Liddell* v. *Standard Accident Ins. Co.* 283 Mass. 340.

The trial judge found that the "policy of insurance was in the standard form of the Massachusetts motor vehicle liability policy." There is no such standard form under our statutes. It is provided by G. L. (Ter. Ed.) c. 175, § 113A, that the form of policy proposed by the insurer must be filed with the commissioner of insurance for at least thirty days, unless approved by him earlier, and is subject to his approval or disapproval. In this respect the statute differs from that as to fire insurance policies, whereby a standard form is established, G. L. (Ter. Ed.) c. 175, § 99, and resembles that as to life insurance policies. G. L. (Ter. Ed.) c. 175, § 132. In any event, however, the policy must contain the matters of substance required by the statutes. *Aetna Life Ins. Co.* v. *Hardison*, 199 Mass. 181, 186. *Vance* v. *Burke*, 267 Mass. 394. It must be assumed, therefore, that the policy provided "indemnity for or protection to the insured and any person responsible for the operation of the insured's motor vehicle with his express or implied consent against loss by reason of the liability to pay damages to others for bodily injuries . . . arising out of the ownership, operation, maintenance, control or use upon the ways of the commonwealth of such motor vehicle." G. L. (Ter. Ed.) c. 90, § 34A. The question in the case at bar is whether McGuinness was such a "person." The words just quoted must be interpreted in the light of the dominant purpose of the statute of which they form a part. That dominant purpose is to make provision for security in the collection of compensation for damages sustained without fault by travellers on the highway through the negligent operation of motor vehicles. These words are not merely terms of contract in a policy of insurance; they

express deliberate legislative design for promotion of human welfare and public safety. The statute was enacted after thorough investigation by a legislative committee of the existing evils and the appalling toll of human life and suffering arising from such negligent operation. *Opinion of the Justices,* 251 Mass. 569, 594, 595, 601, 608. *Rose* v. *Franklin Surety Co.* 281 Mass. 538, 540. It is a remedial statute and is to be construed liberally to suppress the mischief intended to be put down and to advance the remedy which it was intended to afford. *De Costa* v. *Ye Craftsman Studio Inc.* 278 Mass. 315, 317. No motor vehicle can be registered until it is insured or other provision made for the protection of those injured through its negligent use or operation on public ways as provided in G. L. (Ter. Ed.) c. 90, §§ 1A, 34A, 34B, 34D. The history of the investigations preceding the enactment of the compulsory motor vehicle law and its dominating purpose, set forth in *Opinion of the Justices,* 251 Mass. 569, warrant the inference that the intention was that all motor vehicles, so far as registered in this Commonwealth, should be protected in the manner provided by the statute while upon public ways. The statutes prohibit the operation of an unregistered motor vehicle upon the highway. G. L. (Ter. Ed.) c. 90, §§ 2, 9. *Potter* v. *Gilmore,* 282 Mass. 49, 50. The significant words in the quoted statute as applied to the facts of the case at bar are that "indemnity" is afforded to "any person responsible for the operation" of the insured's motor vehicle "with his express or implied consent." On the night in question McGuinness was "responsible" to Mack, the insured, for "the operation" of the motor vehicle of the latter under the terms of the bailment whereby he acquired possession of it. The words "express or implied consent" primarily modify not the word "operation" but the word "responsible." Those words do not convey the thought of consensual relationship between the owner and bailee at the moment liability may arise. They imply a possession of the motor vehicle with consent of the owner and responsibility to him. The words "person responsible" in this context are broad enough in meaning to comprehend a bailee taking possession of a motor vehicle in circumstances such as here

disclosed. The words "express or implied consent" refer to the words "responsible for the operation." They were intended to exclude from the indemnity of the policy one who should take and use the motor vehicle without authority or consent. They mean, in view of the purpose of the statute, that indemnity exists and continues when responsibility for operation in the first instance was imposed by the owner of the motor vehicle upon the person receiving actual possession of it. Indemnity is provided thus for the insured and for any other person who "with the insured's consent might become responsible for the operation of his motor vehicle on a public" way. *Rose* v. *Franklin Surety Co.* 281 Mass. 538, 541. "Responsible" in this connection refers to a motor vehicle in the physical possession of another and means liable, answerable, or under bounden duty for its proper use in accordance with the terms upon which possession has been delivered. *Farley* v. *Day*, 26 N. H. 527, 531. *Sams* v. *Cochran & Ross Co.* 188 N. C. 731, 737. *Crockett* v. *Barre*, 66 Vt. 269, 272.

The phrase of our statute is that the insurance policy must provide indemnity for "any person responsible for the operation of the insured's motor vehicle with his express or implied consent." Any person to whom the owner voluntarily entrusts possession of his motor vehicle for use is "responsible" to the owner for the operation of his motor vehicle, no matter whether the person so entrusted with possession in his use of the motor vehicle observes or breaks the contract of bailment. Such bailee has possession of the motor vehicle with the consent of the owner. The same is true of an employee who acts outside the scope of his employment in his use of his employer's motor vehicle. One "responsible" to the owner "for the operation" of the motor vehicle with the "express or implied consent" of the owner covers a wider field than one merely operating a motor vehicle with the express or implied consent of the owner. The difference is one of substance and not of form. A bailee of an automobile for a definite purpose is "responsible" to the bailor if he uses it for an unauthorized purpose. The rule applies which governs the relations of a livery stable keeper to his patrons. *Hall* v. *Corcoran*, 107

Mass. 251. Under this interpretation of the crucial words of the policy and statute, a bailee such as was the defendant McGuinness, even in the face of direct breach of the terms of his contract of bailment with the defendant Mack, is nevertheless "responsible for the operation" of the motor vehicle to the owner with all the consequences which follow from the original consent to the bailment by the owner. Unauthorized conduct of one to whom a motor vehicle has been entrusted by the owner may entail unpleasant consequences. That result, however, is not uncommon in the law. *Van Oster* v. *Kansas*, 272 U. S. 465, 467. The test under the quoted words of this statute and policy is not whether the "operation" of the motor vehicle at a given moment was with the "express or implied consent" of the owner. The test is whether the operator of the motor vehicle was "responsible" to the owner with his express or implied consent for the operation of the latter's motor vehicle at the time of the injury. Responsibility for operation of the motor vehicle accompanying possession conferred by the owner is the test, not whether the particular operation was with the express or implied consent of the owner.

Only three cases have hitherto come before this court involving the words here construed. In *Johnson* v. *O'Lalor*, 279 Mass. 10, it was held that consent by the owner to the use of his motor vehicle by a bailee did not require the inference of consent to its use by a sub-bailee. It was held in *Boyer* v. *Massachusetts Bonding & Ins. Co.* 277 Mass. 359, that it could have been found that it was within the contemplation of the owner in making bailment of his motor vehicle to his son that it should be used by others. *McNeil* v. *Powers*, 266 Mass. 446, was an action of tort against the owner and arose before the enactment of St. 1928, c. 317, now embodied in G. L. (Ter. Ed.) 231, § 85A. It had no relation to a policy of insurance. No one of these decisions bears upon the point here decided.

There are numerous decisions in other jurisdictions dealing with insurance policies conferring protection when the motor vehicle is being operated with the consent of the

owner in various contexts. It is not necessary to review, distinguish, or analyze them because not one of them contains words like the statute and policy here involved. They are all distinguishable on the crucial point on which this decision rests. Most of them are collected and summarized in 72 A. L. R. 1375–1410. See, also, *Sauriolle* v. *O'Gorman*, 86 N. H. 39. *Johnson* v. *American Automobile Ins. Co.* 131 Maine, 288. *Heavilin* v. *Wendell*, 214 Iowa, 844. *Frederiksen* v. *Employer's Liability Assur. Corp. Ltd.* 26 Fed. Rep. (2d) 76. *Kazdan* v. *Stein*, 118 Ohio St. 217.

The conclusion follows that, upon the facts found by the trial judge, his ruling that the plaintiff could not recover was wrong. On those facts the defendant McGuinness was a "person responsible for the operation of the . . . motor vehicle" of the defendant Mack "with his express or implied consent," at the time of the injury to the plaintiff, and the plaintiff, having obtained judgment against the defendant McGuinness, was entitled to enforce it against the insurer.

*Decree reversed.*

*Decree to be entered in favor of the plaintiff.*