HENRIETTA L. BLAIR *vs.* THE TRAVELERS INSURANCE COMPANY.

TIMOTHY J. GARVEY, administrator, *vs.* SAME.

Worcester.    May 20, 1935. — July 2, 1935.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Insurance*, Motor vehicle liability. *Judgment. Interest. Payment. Words*, "While legally using."

A policy of noncompulsory motor vehicle liability insurance providing that "Assured" should include any person other than the assured "while legally using . . . [the insured] motor vehicle . . . provided that such use is with the permission of the named Assured," did not cover a bailee of the motor vehicle while using it contrary to the terms of the bailment.

The insurer under a policy of compulsory motor vehicle liability insurance is liable to a judgment creditor entitled to enforce the policy, if his judgment is in excess of $5,000, for interest on $5,000 from the date of the judgment, in addition to the $5,000.

Where the insurer under a policy of motor vehicle liability insurance, in a suit in equity to enforce the policy by a judgment creditor with a

judgment in excess of $5,000, paid that sum under the compulsory provisions of the policy pursuant to decree, pending further proceedings as to the noncompulsory provisions, such payment should be applied first to satisfy the accrued interest on the $5,000 and then in reduction of that sum, leaving the insurer liable for the resulting balance with interest thereon from the date of such payment.

Two BILLS IN EQUITY, filed in the Superior Court on February 8, 1933.

The proceedings are described in the opinion.   Final decrees after rescript were entered by *Goldberg*, J.   The defendant appealed therefrom.

*D. F. Gay*, for the defendant.

*E. A. Ryan*, for the plaintiffs, submitted a brief.

LUMMUS, J.   One Toren owned an automobile covered by a motor vehicle liability insurance policy issued by the defendant.   He lent the automobile at Northborough on Saturday, October 24, 1931, to one Dion, for the purpose of enabling Dion to take it that night to Dion's house in Webster and on Sunday morning to Worcester to show to a prospective buyer.   Dion agreed to bring back the automobile or the money on Monday morning.   Nothing was said as to using the automobile for any other purpose. Dion had no license to operate an automobile.

Dion failed to sell the automobile, and had it in his possession in Webster on Sunday evening, when he went for a pleasure ride in it with one Daniel Garvey, the plaintiff Henrietta L. Blair, one Perreault and a Miss Duquette. While the automobile was being operated near the town of Southbridge by Perreault, who had no license to operate, with Dion sitting beside him, and while both were trying to control the automobile, it overturned, killing Daniel Garvey and injuring the plaintiff Blair.   In actions of tort against Dion, the plaintiff Blair recovered judgment for $8,500 and costs for personal injuries, and the plaintiff Timothy J. Garvey, administrator, recovered judgment for $8,755 and costs for the death of his intestate, Daniel Garvey, under G. L. (Ter. Ed.) c. 229, § 5.

Section A of the insurance policy, which was intended to comply with the Massachusetts compulsory motor vehicle

liability security law, limited the obligation of the defendant to $5,000 for liability for injury to or death of one person, and $10,000 for liability for injury to or death of more than one person, resulting from any one accident. By section A the defendant undertook to pay on behalf of the "Assured" all sums within those limits which the "Assured" should become liable to pay by reason of liability for personal injury or death resulting from the ownership, operation, maintenance, control or use of the insured automobile upon the ways of the Commonwealth of Massachusetts. As to section A it was provided that the word "Assured" should include not only the named assured, Toren, "but also any other person responsible for the operation of the named Assured's motor vehicle or trailer described herein with his express or implied consent." This language conformed to the requirements of G. L. (Ter. Ed.) c. 90, § 34A.

In these suits in equity under G. L. (Ter. Ed.) c. 214, § 3 (10), to apply the insurance towards the satisfaction of the judgments, the defendant contended that at the time of the accident Toren's automobile was being operated under such circumstances that Dion was not an "Assured" under the provision quoted, which is often called an "omnibus coverage" or "additional assured" provision. In *O'Roak* v. *Lloyds Casualty Co.* 285 Mass. 532, *Guzenfield* v. *Liberty Mutual Ins. Co.* 286 Mass. 133, and *Moschella* v. *Kilderry*, 290 Mass. 62, it was settled that a statutory policy of insurance such as this must be construed broadly to effectuate the legislative purpose that automobiles actually permitted to be on the public ways be covered by indemnity insurance for the benefit of persons who may suffer personal injury through their operation; that the bailee of an automobile becomes "responsible" to the owner for its operation; and that the required "consent" is consent to the bailment, not consent to the particular use which is being made of the automobile at the moment of the accident. Accordingly, we held in the present cases that each plaintiff had a right to collect from the defendant insurer the maximum statutory amount of insurance, $5,000.

We were not advised, at the time of rescript, whether or not the policy covered a broader risk or a larger sum than was required by the Massachusetts compulsory motor vehicle liability security law.  For that reason, in reversing the decrees dismissing the bills, we ordered decrees for each of the plaintiffs in the amount of $5,000 to which they were certainly entitled under the policy required by that law, and remanded the cases to the Superior Court to determine such further amounts, if any, as might be found due the plaintiffs under the form of insurance policy issued by the defendant to Toren.  *Blair* v. *Travelers Ins. Co.* 288 Mass. 285.  In accordance with that decision, the defendant paid $5,000 to each of the plaintiffs.

Whether the defendant is liable for more, remains to be determined. · The Superior Court has now found the facts heretofore wanting.  Section B of the policy insured "the Assured" to the extent of $10,000 for liability for injury to or death of one person and $20,000 for liability for injury to or death of more than one person, resulting from any one accident, caused by the ownership, operation, maintenance, control or use within the United States or Canada of the automobile in question.  As to section B it was provided that the word "Assured" should include not only the named assured, Toren, "but any other person or organization while legally using any such motor vehicle or trailer, including also any other person or organization legally responsible for the use thereof, . . . provided that such use is with the permission of the named Assured."  So far as section B affords a broader coverage than section A, as to territory, amount, circumstances of operation, or other particulars, the obligation of the defendant is measured exclusively by the words of section B.  *Cormier* v. *Hudson*, 284 Mass. 231, 233, 234.

Section B has a different background.  No statute requires section B.  Until St. 1925, c. 346, the owner of an automobile was free to insure himself against liability resulting from its operation, or not.  The insurance provided by section B of the policy, beyond that required by section A, still remains voluntary and optional.  A person injured by

the operation of the automobile cannot complain of the absence of such insurance, though he acquires statutory rights in it, when it exists, from the moment of the injury. G. L. (Ter. Ed.) c. 175, §§ 112, 113; c. 214, § 3 (10). But his rights do not rise higher than those of the assured. If some defence exists, which would defeat an action on the policy by the assured, the judgment creditor cannot reach the insurance, for there is no "obligation" to be reached under the statute. *Sontag* v. *Galer*, 279 Mass. 309, 312. *Goldberg* v. *Preferred Accident Ins. Co.* 279 Mass. 393, 395, 396. *Souza* v. *Car & General Assurance Corp. Ltd.* 281 Mass. 117. *Sheldon* v. *Bennett*, 282 Mass. 240. *Sleeper* v. *Massachusetts Bonding & Ins. Co.* 283 Mass. 511. *Goff* v. *Benson*, 286 Mass. 119. *Wainer* v. *Weiner*, 288 Mass. 250. *Masterson* v. *American Employers' Ins. Co.* 288 Mass. 518.

Section B does not provide, as does section A, that the word "Assured" shall include any person "responsible for" the "operation" of the automobile with the "express or implied consent" of the owner. It provides, instead, that the word "Assured" shall include any person "while legally using" the automobile, provided "such use" is with the permission of the owner. Was Dion an "Assured" within that definition? Toren had given no permission for a pleasure ride on Sunday evening, although he had not expressly forbidden it. Such a ride was not within the express or implied purposes of the bailment, nor incidental to them, but amounted to a conversion of the automobile. *Lucas* v. *Trumbull*, 15 Gray, 306. *Hall* v. *Corcoran*, 107 Mass. 251. *Perham* v. *Coney*, 117 Mass. 102.

Not much help can be found in the apparently conflicting cases in other jurisdictions, for the words of different policies vary greatly. The words "while legally using" mean using with right, not using in a lawful manner. *Zurich General Accident & Liability Ins. Co. Ltd.* v. *Thompson*, 49 Fed. Rep. (2d) 860, 861, 862. They refer to the time of the accident, not the time of the bailment. *Johnson* v. *American Automobile Ins. Co.* 131 Maine, 288, 293. It is the "use" at the time of the accident that must have been with the "permission" of the owner. In our opinion Dion

was not an "Assured" under section B, and the defendant was erroneously ordered to pay to the plaintiffs the unsatisfied balance of their judgments. The following cases tend to support this conclusion. *Johnson* v. *American Automobile Ins. Co.* 131 Maine, 288. *Kazdan* v. *Stein*, 118 Ohio St. 217. *Indemnity Ins. Co. of North America* v. *Sanders*, 169 Okla. 378. *Brower* v. *Employers' Liability Assurance Co. Ltd.* 318 Penn. St. 440. *Indemnity Ins. Co.* v. *Jordan*, 158 Va. 834. *Cypert* v. *Roberts*, 169 Wash. 33. *Frederiksen* v. *Employers' Liability Assurance Corp. Ltd.* 26 Fed. Rep. (2d) 76. *Trotter* v. *Union Indemnity Co.* 35 Fed. Rep. (2d) 104. *United States Fidelity & Guaranty Co.* v. *Mann*, 73 Fed. Rep. (2d) 465.

The payment by the defendant in each case of $5,000 did not, however, fully discharge its liability if the statutory limit of $5,000 relates only to the damages included in the judgment and is in addition to the costs and to the interest on the judgment. The question remains, whether the maximum obligation of the defendant for liability for injury to or death of one person is $5,000 inclusive of costs and interest, or $5,000 in addition to costs and interest.

Paragraph III (c) of the policy obligated the defendant to pay "irrespective of the limit of liability of the Policy, all costs taxed against the Assured in any such defended suit." The actions of tort were not defended, so far as appears, so that no liability for costs beyond the limit of $5,000 arose. Under the alternative provision for depositing cash as security for damages for bodily injuries or death, instead of furnishing liability insurance, it is provided that there shall be paid, out of the cash deposited, "the amount of the execution, including costs and interest, up to but not in excess of five thousand dollars." G. L. (Ter. Ed.) c. 90, § 34D. It is probable that the Legislature intended the amount of security to be the same, whether consisting of cash or insurance. Although in death cases (*Landry* v. *Gomes*, 273 Mass. 225; compare *Cochran* v. *Boston*, 211 Mass. 171), interest may form part of the damages awarded, the word "interest" in the statute quoted apparently does not refer to interest which has lost its identity by being

included in the damages in the verdict or finding. Such interest would require no special mention in the statute to make sure that it was included in the $5,000. The statute evidently refers to some interest separately computed after the verdict or finding in much the same way as the costs, which likewise form part of the judgment and execution. From the date of the verdict or finding to the date of judgment the clerk computes and adds interest in entering judgment. G. L. (Ter. Ed.) c. 235, § 8. It is that interest, we think, to which G. L. (Ter. Ed.) c. 90, § 34D, refers, as being included in the maximum of $5,000.

But after the entry of judgment, the situation is changed. The assured having become "obligated to pay" by the judgment, the insurer comes under an immediate duty to him to discharge the judgment. By our statute, the assured is under no duty to the insurer to satisfy the judgment before requiring the insurer to pay it. G. L. (Ter. Ed.) c. 175, § 112. *Lorando* v. *Gethro*, 228 Mass. 181. The judgment gives the injured person a right to have the insurance applied to the satisfaction of the judgment if the judgment shall not be paid within thirty days. G. L. (Ter. Ed.) c. 175, § 113; c. 214, § 3 (10). "Every judgment for the payment of money shall bear interest from the day of its rendition." G. L. (Ter. Ed.) c. 235, § 8. If a judgment secured to the full amount of $5,000 by compulsory liability insurance should not carry interest on $5,000 against the insurer, the insurer would escape the usual penalty of interest for detention of money, but would profit by the use of the unpaid money in proportion to the delay it might secure before performing its obligation. Such a result would not accord with the legislative intention. This is not a case where a plaintiff seeks to recover interest for the failure to pay promptly a principal debt which has nevertheless been paid. *Davis* v. *Harrington*, 160 Mass. 278. Here, at the time when $5,000 was paid to each of the plaintiffs, the defendant owed $5,000 and interest thereon from the date of the judgments. The payment of $5,000 in each case was a general payment on what was due. It should be applied first to the payment of the interest then due on $5,000

of the judgment debt, and then in reduction of that $5,000. *Ferry* v. *Ferry*, 2 Cush. 92, 98.   *Downer* v. *Whittier*, 144 Mass. 448, 452.   Each plaintiff is entitled to a decree for the payment of the unpaid balance of the $5,000, with interest on such balance from the date of the earlier payment.

In each case the final decree is reversed, and a final decree for the plaintiff is to be entered in accordance with this opinion, with costs.

*Ordered accordingly.*