LIBERTY MUTUAL INSURANCE COMPANY *vs.* WILLIAM J. TABOR & another.[1]

Plymouth. January 10, 1990. - May 14, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Insurance*, Motor vehicle insurance, Construction of policy, Coverage. *Public Policy.*

A business automobile insurance policy providing noncompulsory motor vehicle liability coverage for the negligent acts of an insured was not subject, on public policy grounds, to an "amendatory endorsement" that effectively nullified coverage by incorporating limitations and exclusions in the automobile rental contract signed by the insured. [357-358]

The phrase "while using with [the rental company's] permission a covered auto" in a business automobile insurance policy did not restrict permitted uses to only non-negligent operation of the vehicle, as such a construction would provide coverage only when there is no liability, and would be void as against public policy. [359-361]

A business automobile insurance policy that plainly stated that the insurer would pay an insured two million dollars per accident provided broader coverage than compulsory automobile insurance coverage, and exclusions or limitations not clearly expressed in the policy were to be resolved against the insurer. [361-362]

CIVIL ACTION commenced in the Superior Court Department on January 10, 1988.

The case was heard by *Constance M. Sweeney*, J., on motions for summary judgment, and entry of separate and final judgment was ordered by *Chris Byron*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Stephen T. Keefe, Jr.,* for the plaintiff.

---

[1] The Hanover Insurance Company.

*Clyde D. Bergstresser* for William J. Tabor.

ABRAMS, J. Liberty Mutual Insurance Company appeals from a judgment declaring that a business auto policy, which it issued to Embassy Motors, Ltd., doing business as Reliable Rentals and Rent-a-Relic (Embassy), afforded primary coverage beyond the compulsory liability limits to Catherine C. Skinner. Skinner rented a vehicle from Embassy, negligently drove the vehicle and severely injured William J. Tabor. On appeal, Liberty asserts that the judge erred in declaring that the business auto policy afforded noncompulsory liability insurance coverage to Skinner. Liberty contends that (1) Skinner was engaged in a "prohibited use" of the rental vehicle at the time of the accident; (2) she was not an "insured" for purposes of that policy's noncompulsory liability coverage; and (3) the business auto policy and a rental agreement incorporated in that policy by an amendatory endorsement limit the amount of liability coverage available to indemnify Skinner to the minimum compulsory liability coverage. See G. L. c. 90, § 34A (1988 ed.). We affirm the judgment.

The facts are not in dispute. Liberty issued two insurance policies to Embassy. One was a business auto policy, which provided two million dollars of noncompulsory liability insurance, and the other was an umbrella excess liability policy (umbrella policy) with a one million dollar liability limit. On February 2, 1985, Skinner rented an automobile from Embassy to use in place of her own car, which was being repaired. The Hanover Insurance Company (Hanover) had issued a Massachusetts automobile insurance policy to Skinner (Hanover policy), covering her own automobile, with liability limits of $100,000 per person and $300,000 per accident. On February 25, 1985, while operating the rented automobile, Skinner struck Tabor, a pedestrian, causing extensive bodily injury. Liberty, Tabor, and Hanover agree that, at the time of the accident, Skinner was negligent, under the influence of alcohol, and violating one or more State vehicle codes. Tabor sued Skinner in an action for negligent operation of a motor vehicle and obtained a judgment in the amount of $2,165,000, plus interest and costs.

Liberty commenced this case by seeking, alternatively, the declaration that (1) the business auto policy did not afford coverage to Skinner for any claims arising out of the accident; (2) the business auto policy did not afford coverage to Skinner beyond the compulsory liability limits; or (3) the coverage the business auto policy afforded to Skinner was secondary to that provided by the Hanover policy.[2] The trial judge allowed Liberty's motion to amend the complaint to add Hanover as a party defendant. Hanover filed an intervener complaint, a cross-complaint, and a motion for summary judgment. Tabor filed a motion for summary judgment and requested a declaration that full coverage from each of the three policies was available to pay the judgment entered in his favor against Skinner "as a result of any negligence by Skinner."

The judge allowed Tabor's motion for summary judgment and Hanover's motion to intervene as a plaintiff in the cross-claim. On Hanover's motion for summary judgment, the judge ordered that the noncompulsory liability coverage provided in Liberty's business auto policy was primary coverage for Tabor's damages and that, to the extent his recovery exceeded that amount, coverage would be provided in equal shares by Liberty's umbrella policy and the Hanover policy. She further ordered that, on exhaustion of the Hanover policy's three hundred thousand dollar coverage, any amount remaining on Liberty's umbrella policy would be applied against any remaining, unpaid damages to Tabor. Final judgment entered for Tabor pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974). Liberty appealed from allowance

[2]Hanover's cross-complaint sought declaratory relief to determine the priority of coverage between Liberty's business auto policy and the Hanover policy. Hanover also requested a declaration that the business auto policy offered primary coverage for all loss up to two million dollars; and that both the Hanover policy and Liberty's umbrella policy offered excess coverage and that each should be applied, on a basis proportional to their respective limits, to any liability beyond two million dollars. Liberty did not contest the applicability of the umbrella policy to this case; it only contested the question when that policy was payable in relation to the other two policies.

of Tabor's motion for summary judgment, the order on Hanover's motion for summary judgment, allowance of Tabor's motion for entry of final judgment, and entry of judgment. We transferred the case to this court on our own motion. We affirm the orders and judgment.

1. *Prohibited Use.* The business auto policy provided that two million dollars in noncompulsory motor vehicle liability insurance would be available to an "insured," defined as Embassy and "[a]nyone else . . . while using with [Embassy's] permission a covered auto," subject to three exceptions not applicable here. The policy was subject to an "amendatory endorsement," however, which stated that "[t]he insurance provided by this policy for the lessee, rentee, its servants, agents, or employees or those using the automobile with or without the permission of the lessee or rentee or persons alleged to be legally responsible for the use of the automobile is subject to the terms, including any limit of liability, conditions, restrictions, and limitations contained in the lease or rental agreement." A boldfaced warning on the front page of the two-page rental agreement stated, "Warning: Only renter and additional driver are covered by insurance."[3]

The "vehicle insurance" provision continued, providing in relevant part that the business auto policy "shall not apply . . . to any liability of Customer or any driver . . . arising while the Vehicle is being used in violation of any of the limitations set forth in Paragraph 2." Paragraph 2 listed "prohibited uses" of a rental vehicle and provided, in part, that a vehicle shall not be used "in violation of any federal, state or local laws. (If the Customer [renter] is negligent or violates any of

---

[3]A "vehicle insurance" provision found on the back page stated that "[Embassy] has automobile liability insurance with limits as required by law. If Customer has such insurance then [Embassy's] policy shall be secondary coverage and the Customer's policy shall be primary coverage."

Our rule is that, "[w]here . . . the driver does not own the vehicle he was driving in the accident, the coverage on the car is primary while the coverage of the driver is excess as between two automobile insurers whose policies contain identical 'other insurance' clauses." *Transamerica Ins. Co.* v. *Norfolk & Dedham Mut. Fire Ins. Co.*, 361 Mass. 144, 148 (1972), and cases cited. Liberty does not argue otherwise on appeal.

the state vehicle codes or is under the influence of alcohol or drugs, the Customer is totally responsible for all damages to the Vehicle and for any other claims by any other parties.)"

The business auto policy expressly stated that Liberty "will pay [up to two million dollars to an insured] for any one accident or loss." The policy defined "accident" to include "continuous or repeated exposure to the same conditions resulting in bodily injury or property damage the insured neither expected nor intended." The term "accident," however, commonly is defined as "an unexpected happening without intention or design," *Beacon Textiles Corp. v. Employers Mut. Liab. Ins. Co.*, 355 Mass. 643, 646 (1969), and cases cited; see *Sheehan v. Goriansky*, 321 Mass. 200, 205 (1947), and may include "[u]nintended or unforeseen consequences of reckless or negligent acts." *Vappi & Co., Inc. v. Aetna Casualty & Sur. Co.*, 348 Mass. 427, 432 (1965), and cases cited. See *Quincy Mut. Fire Ins. Co. v. Abernathy*, 393 Mass. 81, 84 (1984). Under this definition, the business auto policy, standing alone, would cover an insured's negligent acts despite paragraph 2 ("prohibited uses").

The rental agreement, however, redefines the term "accident" as defined in the policy, by excluding liability for an injury involving the violation of any law or vehicle code or involving negligent conduct, which typically involves unexpected or unintended consequences. See, e.g., *Luz v. Stop & Shop, Inc. of Peabody*, 348 Mass. 198 (1964). The rental agreement thus nullifies coverage in situations in which an insured would be liable as a result of the insured's negligence. "It is common knowledge that protection against liability on the ground of negligence is the principal purpose of [motor vehicle liability] policies . . . . The object of the policy is protection against law suits and legal liability." *Miller v. United States Fidelity & Guar. Co.*, 291 Mass. 445, 448 (1935). The rental agreement renders the "insurance" coverage provided by the business auto policy illusory. A provision in an insurance policy that negates the very coverage that the policy purports to provide in the circumstances where the person is liable is void as against public policy.

2. *Insured.* The business auto policy provided that liability coverage applied to an "insured," which it defined as Embassy and "[a]nyone else . . . while using with [Embassy's] permission, a covered auto."[4] Liberty claims that Skinner was not an insured because she "was not using the rental automobile with [Embassy's] permission at the time of the accident."[5] It asserts that, by operating the automobile negligently, in violation of the State vehicle code, and under the influence of alcohol, Skinner engaged in a "prohibited use" of the automobile as set forth in the rental agreement. She was not therefore using the automobile with Embassy's permission and did not qualify as an "insured." Thus, concludes Liberty, Skinner was not covered by the policy. In support of its argument, Liberty cites a string of cases where owners loaned or rented their vehicles for a specific and limited use and the person to whom the vehicle was entrusted engaged

---

[4]The business auto policy defined covered automobiles as "[a]ny auto used under a written rental agreement, issued by [Embassy], stating a rental period of less than one year and in which [Embassy] agree[s] to provide the insurance" and "[a]ny auto used in [Embassy's] leasing and rental business, or used for nonbusiness purposes with [Embassy's] permission, except any auto when used under a written rental or leasing agreement issued by [Embassy]."

[5]Tabor asserts that Liberty did not raise this question at the trial level and argues that we should not consider it for the first time on appeal. See *Anthony's Pier Four, Inc.* v. *Crandall Dry Dock Eng'rs, Inc.*, 396 Mass. 818, 821 n.6 (1986), citing *Penney* v. *First Nat'l Bank*, 385 Mass. 715, 718 n.2 (1982). We agree with Liberty that the issue was before the trial judge. Liberty's amended complaint asserted that the rental agreement provided "that insurance would not apply if the vehicle was used in violation of the terms of the agreement" and asserted that Skinner had violated those terms. In its memorandum in opposition to summary judgment, Liberty argued that there was a genuine issue as to the question of Skinner's sobriety, which was one of several factors affecting the availability of insurance coverage. After oral argument on the summary judgment motion, the parties stipulated that Skinner was operating under the influence. We agree with Liberty that the pleadings placed the "consent to use" issue before the judge. Indeed, the judge's memorandum of decision concluded that Skinner was an insured as that term was defined in the business auto policy.

the vehicle in an impermissible use.[6] See, e.g., *O'Brien* v. *Ready*, 331 Mass. 204, 207-208 (1954); *Lodge* v. *Bern*, 328 Mass. 42 (1951). *Kenner* v. *Century Indemnity Co.*, 320 Mass. 6, 10 (1946). *Blair* v. *Travelers Ins. Co.*, 291 Mass. 432, 436 (1935). We conclude that Skinner was an insured.[7]

Our cases suggest that the phrase "while using with [Embassy's] permission" refers to the question whether an insured has been given "authority to operate" or "the right to possession" of an automobile for a specific purpose. See *Hurley* v. *Flanagan*, 313 Mass. 567, 572 (1943); *White* v. *Standard Accident Ins. Co.*, 302 Mass. 474, 476 (1939). Skinner signed the rental agreement and was listed as an authorized driver. Skinner's "use" of the automobile was within the scope of Embassy's permission.

Liberty's argument boils down to an assertion that Embassy did not give permission to Skinner to be negligent. The sole restriction on Skinner's use of the vehicle was that she agreed "not to use the vehicle for commercial purposes unless specifically authorized." The record indicates that Skinner was using the vehicle for personal purposes as a temporary replacement for her own car, which was being repaired.

We reject the proposition that the phrase "while using with [Embassy's] permission, a covered auto" includes only non-negligent operation of the vehicle as a permitted use. Such a construction would provide coverage only when there was no liability. As we noted earlier, a provision in an insur-

---

[6] The implication of this argument is that, but for Skinner's "prohibited use" of the vehicle, the two million dollar noncompulsory liability coverage would be available to satisfy Tabor's recovery.

[7] Tabor argues that the agreement created ambiguity regarding the availability of insurance coverage because the average person would not know that negligent operation of a rental vehicle at the time of an accident would vitiate the owner's permission and negate coverage. Tabor also suggests that the average person would not know the extent of the insurance coverage from reading the policy. We need not consider that argument that "in passing on a question concerning coverage available under a policy of insurance, 'it may be appropriate to consider what a policyholder reasonably should expect his coverage to be in the circumstances.' *Bond Bros.* v. *Robinson*, 393 Mass. 546, 551 (1984)." *Home Indem. Ins. Co.* v. *Merchants Distribs., Inc.*, 396 Mass. 103, 107 (1985).

ance policy that provides coverage only when there is no lia-bility is void as against public policy.

3. *Compulsory Coverage.* Liberty argues that "[n]owhere in the body of either the lease or the insurance contract is there language from which one can discern an intent to pro-vide coverage for leasees up to the $2,000,000 limit available to Embassy." The business auto policy plainly states that Liberty will pay an insured (Embassy and anyone using a covered auto with Embassy's permission) two million dollars per accident.

Liberty suggests, despite that language, that a person reading the policy would not have any "reasonable expecta-tion" that the policy covered anything other than compulsory coverage. We do not agree. An average person reading the policy would not know that the insurance only covered inci-dents in which, as a matter of law, there could be no liability or that, even if there were liability, Liberty would pay only the compulsory amount of insurance. A reasonable person reading the policy, including the statement in the business auto policy that up to two million dollars would be paid for any one accident, would conclude that the policy protection was broader than compulsory insurance.

Liberty next maintains that, even if "portions of the lease agreement are violative of public policy (prohibited use pro-vision), the lease read as a whole only provides the statutory limits" (i.e., compulsory insurance). See G. L. c. 90, § 34A.[8] In support of its contention, Liberty relies on the amendatory

---

[8]Liberty asks that we construe the statutory limits provision as an excep-tion to the "vehicle insurance provisions" and that we construe "statutory limits" as meaning minimum coverage. Because the language of this policy is not prescribed by statute, nor is it controlled by the Division of Insur-ance, see *Bilodeau* v. *Lumbermens Mut. Casualty Co.*, 392 Mass. 537, 541 (1984), the insurance contract is construed strongly against the in-surer. See *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81, 83 (1984).

Further, on the result we reach, we need not decide whether, as Tabor contends, "statutory limits" is ambiguous because it does not necessarily mean compulsory minimum coverage. Tabor argues that "limits" means "cap" in those States where a cap is applicable.

endorsement and a provision in the rental agreement stating that "[t]he Renter is provided with the state statutory limits in the state where the vehicle is rented: Bodily Injury, Property Damage, and Medical Payments Coverage." Liberty claims that, if Skinner is an insured, she only was entitled to the minimum coverage by virtue of that language. Liberty argues that the language, properly interpreted, excludes all coverage other than compulsory from the prohibited use provision of the rental agreement. The policy is ambiguous as to whether the limitation of liability applies only to amounts over the compulsory insurance. Nothing in the rental agreement limited the "prohibited use" language to noncompulsory coverage. The agreement's "prohibited use" and "vehicle insurance" language excludes all coverage for accidents or injuries based on negligence.

Liberty also argues that we should read the "statutory limits" language as an exception to the prohibited use provision of the rental agreement. "It is well established that, where an insurer drafts the policy, the language is strictly construed and all ambiguities are resolved against the insurer." *Transamerica Ins. Co.* v. *Norfolk & Dedham Mut. Fire Ins. Co.*, 361 Mass. 144, 147 (1972). By its language, the policy does not state that the "statutory limits" provision is an exception from the prohibited use language of the rental agreement. The prohibited use language in the rental agreement contains no exclusion for compulsory coverage. We will not read into the policy any purported limitation of liability based on an exclusion not clearly expressed by the drafter.

We affirm the judgment declaring that the noncompulsory liability coverage in Liberty's business auto policy was primary coverage for damages sustained by Tabor and that, to the extent his recovery exceeded that amount, equal coverage shall be provided by Liberty's umbrella policy and the Hanover policy, up to their respective policy limits.

*So ordered.*