UNITED NATIONAL INSURANCE COMPANY & another[1] *vs.*
PHILIP KOHLMEYER, administrator,[2] & another.[3]

No. 09-P-1798.

Middlesex. October 13, 2010. - December 14, 2011.

Present: McHUGH, RUBIN, & HANLON, JJ.

*Insurance,* Excess liability insurance, Motor vehicle insurance. *Practice, Civil,*
Declaratory proceeding, Instructions to jury. *Motor Vehicle,* Insurance,
Permission to operate. *Consent.*

In a civil action brought by an excess insurer, seeking a judgment declaring
that the employee of an insured did not have express or implied permission
to drive the insured automobile in question at the time of an accident that
killed a pedestrian, the judge properly instructed the jury that the insurer
was required to prove that the employee did not have the implied consent
of the insured to use the vehicle at the time and place of the accident,
where the presumption embodied in G. L. c. 231, § 85C, did not apply, in
that the policy at issue was an excess insurance policy, not the compulsory
liability policy required of all vehicles registered in Massachusetts; and
where, at any rate, the presumption was rebutted by evidence that would
have warranted a finding that the employee was not covered. [36-38]
In a civil action brought by an excess insurer, seeking a judgment declaring
that the employee of an insured did not have express or implied permission
to drive the insured automobile in question at the time of an accident that
killed a pedestrian, the judge properly declined to give requested instruc-
tions on bailment [38] and agency [38-39].

CIVIL ACTION commenced in the Superior Court Department on
August 30, 2002.

The case was tried before *Thayer Fremont-Smith,* J.

*Christopher C. Trundy* for Philip Kohlmeyer.

*Richard J. Riley* for the plaintiffs.

McHUGH, J. On November 13, 1997, Alonzo McConnico, an

_____

[1]Travelers Rental Company, Inc., doing business as Dollar Rent-A-Car.
[2]Of the estate of Sheila Kohlmeyer.
[3]Alonzo McConnico.

employee of Travelers Rental Company, Inc., doing business as Dollar Rent-A-Car (Dollar), struck and killed Sheila Kohlmeyer, a pedestrian, while he was driving one of Dollar's automobiles. After the accident, Dollar and its excess insurer, United National Insurance Company (United), filed an action against McConnico and Kohlmeyer's estate (estate) seeking a declaration that McConnico did not have express or implied permission to drive the Dollar automobile at the time of the accident. After a two-day trial, a jury agreed. A judgment containing the resulting declaration then entered, with the consequence that no insurance was available from United to satisfy the judgment against McConnico. The estate appeals, and we affirm.

*Background.* After the accident, the estate filed a wrongful death action against McConnico and Dollar, though for reasons the record does not fully reveal, Dollar was dismissed from that action by stipulation. McConnico was defaulted for failing to appear and the action proceeded to a jury trial on damages. The jury returned a verdict in the amount of $203,357. Claiming that the verdict was inadequate, the estate appealed. We affirmed in an unpublished memorandum and order pursuant to our rule 1:28. See *Kohlmeyer* v. *McConnico*, 74 Mass. App. Ct. 1111 (2009).

While the estate's case was proceeding, United commenced the present action against the estate and McConnico in an effort to obtain a declaration effectively shielding it from liability under an excess liability insurance policy it had issued to Dollar. The policy, which had a per accident limit of $900,000, was in force on the day of McConnico's accident.[4] Insofar as is relevant here, the policy provided coverage for liability incurred by Dollar and "[a]nyone . . . using with [Dollar's] permission" an automobile Dollar owned.

United's declaratory judgment action came on for trial after judgment had entered in the estate's case but before the estate filed its appeal.[5] The basic facts, as shown by the trial evidence, are straightforward. McConnico was employed by Dollar at one

[4]To fulfil its liability insurance obligations under G. L. c. 90, § 34A, Dollar self-insured for the first $100,000 of liability. United's policy provided insurance for liability in excess of that amount.

[5]An earlier appeal had been filed but was dismissed without prejudice because of deficiencies in the record.

of its downtown Boston rental offices. His primary responsibility involved delivering automobiles to various city hotels at the request of potential renters. On the evening of November 12, 1997, the office manager left McConnico in charge of the office with instructions to close it at the proper time and open it the following morning. McConnico had an errand to run that evening and, because his own automobile was unavailable, he took one of Dollar's vehicles. The following morning, as he was driving the vehicle back to the office, he was involved in the accident.

Less clear was whether and to what extent Dollar had authorized or permitted McConnico to drive the vehicle. The evidence presented by Dollar tended to support the proposition that McConnico had no authority or permission whatsoever. That evidence included McConnico's written acknowledgment at the time he was hired that he was prohibited from using company rental vehicles unless he did so under the direction of a Dollar manager and that unauthorized use of Dollar's vehicles was grounds for discharge. McConnico testified at trial that he was not driving the automobile for any business purpose at the time of the accident, that he had never before taken a Dollar vehicle home overnight, that he knew of no other Dollar employee who had done so without express permission, and that he had tried unsuccessfully to get in touch with his manager to obtain permission to drive before he took the automobile on the night in question. Other Dollar employees testified about the prohibition on personal use of Dollar vehicles, that McConnico had no permission to drive the vehicle home, and that McConnico had been fired on the morning of the accident for violating the Dollar policy.

The estate's evidence tended to show a much looser arrangement, one in which personal use of Dollar automobiles was commonplace and few employees were reprimanded for doing so. Although written Dollar policies prohibited employees from personal use of Dollar vehicles, the policies were neither enforced nor stressed during the course of training. The working environment was "fast-paced" and employees often took automobiles without asking for permission to do so. The evidence also suggested that when McConnico was placed in charge of the facility with instructions to close and reopen it, he had the

authority to make all decisions regarding the facility's operation, including decisions about who should be permitted to take automobiles and for what purposes.

The factual questions thus raised were sent to the jury for a special verdict consisting of the answer to a single question. See Mass.R.Civ.P. 49(a), 365 Mass. 812 (1974). The question read, "[d]oes the evidence establish that, more probably than not, McConnico was an unauthorized driver of Dollar Rent-A-Car's motor vehicle when the accident occurred?" The jury checked the box marked "yes" on the verdict form and orally affirmed the verdict in open court.

The issue that divides the parties here, as it divided them in the Superior Court, concerns the instructions the judge gave to the jury. In essence, the judge told the jury that United was · required to prove that McConnico did not have permission to use the vehicle at the time and place he was using it when the accident occurred.[6] Because no one claimed that anyone had expressly given McConnico permission to use the vehicle, the judge further refined the issue by telling the jury that the issue they were to decide focused on the question of implied consent.

The estate sought an instruction based on G. L. c. 231, § 85C, to the effect that McConnico was presumed at the time of the accident to be driving the vehicle with Dollar's express or implied consent.[7] Counsel for the estate reasoned that the presumption would apply if, after obtaining a verdict against

---

[6]Earlier, the judge denied United's motion to place on the estate the burden of proving that McConnico had permission to drive the vehicle. The estate claims that the judge said on several occasions that United had the burden of proving that McConnico was "an authorized" driver or otherwise misstated the issue. Even if one assumes that the lines of the transcript to which the estate points were not transcription errors, the instructions as a whole clearly conveyed the nature of the estate's burden, and that clarity was enhanced by the single written question the jury were instructed to answer.

[7]General Laws c. 231, § 85C, amended by St. 1975, c. 377, § 95, provides:

"In any civil action, under [G. L. c. 175, § 113,] and [G. L. c. 241, § 3(9),] to reach and apply the proceeds of any motor vehicle liability policy, as defined in [G. L. c. 90, § 34A], by a judgment creditor in any action to recover damages for bodily injuries, including death at any time resulting therefrom, or the consequential damages specified in said [§ 34A], arising out of an accident or collision in which a motor vehicle . . . was involved, and in any action under [G. L. c. 90, § 34G,] on a motor vehicle liability bond, as defined in said [§ 34A], it shall be

McConnico, the estate had commenced an action against United to recover under United's policy and there was no reason that the estate should be deprived of the presumption simply because United struck first. We think that there is less to that dispute than initially meets the eye and that the approach taken by the judge does not amount to reversible error. Indeed, that approach was more favorable to the estate than the approach it sought.

*Discussion.* The presumption embodied in G. L. c. 231, § 85C, is part of a legislative structure supporting the Commonwealth's compulsory motor vehicle insurance requirements. Read in the context of the statutes to which § 85C refers, the support structure operates in this fashion. An insurer's liability under an automobile policy "insuring against liability for loss or damage on account of bodily injury or death" becomes absolute when a covered loss occurs and is not conditioned on an insured's payment of the loss to the injured party. See G. L. c. 175, § 112, amended by St. 1977, c. 437. If the injured party obtains a judgment against the insured, the injured party is entitled to bring an action against the insurer to reach and apply the insurance proceeds. See G. L. c. 175, § 113; G. L. c. 214, § 3(9). In an action to reach and apply, the presumption desired by the estate applies but, as § 85C expressly states, only if the plaintiff is seeking to "reach and apply the proceeds of [a] motor vehicle liability policy, as defined in" G. L. c. 90, § 34A.[8]

That limitation provides the first obstacle in the estate's path on this appeal, for the liability policy defined in G. L. c. 90, § 34A, is the compulsory policy required of all vehicles registered in Massachusetts. Applying the presumption to that policy facilitates the public protection that for years has provided the basis for the compulsory requirement itself. See generally *Oliveria* v. *Preferred Acc. Ins. Co.,* 312 Mass. 426, 429 (1942). Cf. *Transamerica Ins. Co.* v. *Norfolk & Dedham Mut. Fire Ins.*

---

presumed that at the time of such accident or collision such vehicle was being operated, maintained, controlled or used with the express or implied consent of the named person insured in such policy or the principal of such bond, and the absence of such consent shall be an affirmative defence to be set up in the answer and proved by the defendant."

[8]The presumption also applies in certain actions under motor vehicle liability bonds defined in § 34A, but this case does not involve such a bond.

*Co.*, 361 Mass. 144, 146-147 (1972). But there is no question that United's policy was an excess policy, with coverage beginning at $100,000, well above the compulsory policy's $20,000 requirement, and not a compulsory policy defined in § 34A. See *Insurance Rating Bd.* v. *Commissioner of Ins.*, 356 Mass. 184, 189 (1969). See also *Blair* v. *Travelers Ins. Co.*, 291 Mass. 432, 435-437 (1935). By its terms, then, § 85C did not apply to actions involving the United policy.

There is, though, a second hurdle. Ordinarily, the insured, or someone standing in the shoes of the insured, is required to prove coverage. See *Markline Co.* v. *Travelers Ins. Co.*, 384 Mass. 139, 140 (1981). In seeking recovery under United's policy, the estate was standing in the shoes of McConnico or Dollar or both. The presumption would have eased the estate's burden initially, but it was "rebuttable, and continue[d] only until evidence [was] introduced which would warrant a finding contrary to the presumed fact." *Scaltreto* v. *Shea*, 352 Mass. 62, 64 (1967).[9] Here, there was such evidence. Had the judge been operating under § 85C, therefore, he would have been entirely warranted in saying nothing about the presumption.[10] See *Morgan* v. *Lalumiere*, 22 Mass. App. Ct. 262, 265 (1986).

---

[9]Different considerations may arise when applying G. L. c. 231, § 85A. See *Arrigo* v. *Lindquist*, 324 Mass. 278, 280 (1949).

[10]Relying on *Boudreau* v. *Maryland Cas. Co.*, 287 Mass. 423 (1934), and *O'Roak* v. *Lloyds Cas. Co.*, 285 Mass. 532 (1934), the estate says that the central issue in this case involves "consent," as expansively defined in those cases, not "permission." See G. L. c. 90, § 32E. But, even if one puts aside the fact that those cases dealt with a statutory overlay on the scope of compulsory policies, the cases are inapposite, for they dealt with a question that is different from the one that this case presents. It was clear in both cases that the vehicle owner had given another person permission to operate the vehicle, i.e., " 'authority to operate' or 'the right to possession' of an automobile for a specific purpose." *Liberty Mut. Ins. Co.* v. *Tabor*, 407 Mass. 354, 360 (1990). The central question the cases presented had to do with whether the operator's violation of limitations on operation the owner had imposed somehow stripped away insurance coverage that attached when the owner gave possession of the vehicle to the operator. See, e.g., *Drescher* v. *Travelers Ins. Co.*, 359 Mass. 458, 461 (1971); *Muzichuk* v. *Liberty Mut. Ins. Co.*, 2 Mass. App. Ct. 266, 271 (1974). Here, the question, resolved on conflicting evidence, was whether McConnico had been given any operational permission. The answer to that question determined whether coverage ever attached, and the judge's instructions properly focused the jury on that question. See generally *White* v. *Standard Acc. Ins. Co.*, 302 Mass. 474, 475-476 (1939); *Kneeland* v. *Bernardi*, 317 Mass. 517, 519-520 (1945); *Scaltreto* v. *Shea*, 352 Mass. at 64-65.

Of course, even without the presumption, the statute places the burden of proving lack of consent on the insurer. That is exactly where the judge placed it. That burden never disappeared. Consequently, like any other instruction on the burden of proof, the instruction guided and informed the jury's deliberations from the moment they retired until the moment they reached a verdict, in the process giving the estate all that it would been entitled to receive had § 85C applied to this policy.

Two other issues require less discussion. First, the estate requested an instruction on bailment, which the judge rightly declined to give.[11] Among other things, the instruction's definition of bailment was overbroad. See, e.g., *King* v. *Trustees of Boston Univ.*, 420 Mass. 52, 59 (1995). Second, the instruction did not ask the jury to determine whether a bailment existed even though existence of a bailment was a necessary predicate for the liability instruction with which the request closed. Finally, the instruction purported to rest on two cases, see note 10, *supra*, involving legal principles that arise out of compulsory policies, which United's policy was not.

Finally, the estate sought an instruction on agency that the judge also rightly rejected.[12] That instruction also rested on cases involving compulsory policies. Moreover, implicit in the request was a finding that McConnico had permission to drive the vehicle. But whether McConnico had permission to drive

---

[11]The request stated:

> "A bailment is a contract whereby one person holds in trust property of another. A bailment may be created where an employee is placed in control of automobiles for the purpose [of] delivery or rental to the public. Where a bailee, the person holding the automobiles, breaches instructions of the bailor, the owner, the insurer may not refuse coverage on the grounds of such breach of the terms of bailment.

> "If you find such bailment, you must find in favor of the defendant."

[12]The request stated:

> "The law of the Commonwealth requires that even when a servant or agent of the insured breaches rules of conduct such a breach of conduct does not destroy the owner's consent to use of the vehicle. Thus, even if the employer attempted to limit consent by a rule or regulation, the permission to drive the vehicle for business purposes withstands the breach of any limitation."

was the very question sent to the jury. If their answer had been "yes," the estate would have prevailed and the requested instruction would have been unnecessary. If, as happened, their answer was "no," an essential predicate for the instruction did not exist.

*Judgment affirmed.*