BARBARA A. HURLEY *vs.* JOHN J. FLANAGAN & others.

Norfolk.    October 7, 1941. — April 26, 1943.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Insurance,* Motor vehicle liability insurance.  *Evidence,* Presumptions
and burden of proof.  *Equity Pleading and Practice,* Master: conclu-
sions from findings, exceptions to report.

By the provisions of § 85C, added to G. L. (Ter. Ed.) c. 231 by St. 1937,
c. 439, the burden of proving that an operator of a motor vehicle,
against whom a judgment had been rendered for personal injuries
caused by his negligence, was not a person responsible for the opera-
tion of the vehicle with the express or implied consent of the insured
under a compulsory motor vehicle insurance policy covering the ve-
hicle, was on the defendant in a suit by the judgment creditor against
the insurer to enforce the policy.
Subsidiary findings by a master, in a suit to enforce a policy of compul-
sory motor vehicle insurance in satisfaction of a judgment for personal
injuries rendered against an operator of the automobile covered by the
policy, which showed that the operator was not the insured and that
he was not a person responsible for the operation with the insured's
express consent and left in the field of conjecture the question, whether
there was implied consent of the insured to such responsibility, re-
quired a conclusion that the insurer had not sustained the burden of
proving the affirmative defence of absence of consent placed upon it
by § 85C added to G. L. (Ter. Ed.) c. 231 by St. 1937, c. 439, irrespec-
tive, of the presumption referred to in that statute, and required a
decree for the plaintiff.
No prejudicial error appeared in the overruling of exceptions to a master's
report based on his admission of certain evidence and on language in
his statement of his conclusions which seemed to show that he con-
sidered the presumption described in § 85C added to G. L. (Ter. Ed.)
c. 231 by St. 1937, c. 439, where it did not appear that the master
gave any consideration to such evidence or presumption in making
his subsidiary findings, upon which alone his conclusions were based,
and that this court reached its conclusion unaffected by the conclu-
sions of the master.

BILL IN EQUITY, filed in the Superior Court on September
11, 1939.

From an interlocutory decree overruling exceptions to
the master's report and confirming the report, entered by

order of *Buttrick,* J., and a final decree, entered by order of *Beaudreau,* J., the defendant insurer appealed.

*D. H. Fulton,* for the defendant American Motorists Insurance Company.

*J. J. Curran,* for the plaintiff.

FIELD, C.J.  The plaintiff recovered a judgment in the Superior Court against John J. Flanagan in an action of tort for personal injuries sustained by the plaintiff as the result of the negligent operation by said Flanagan, on December 25, 1937, of an automobile owned by Thomas S. Rubicus covered by a policy of liability insurance issued under the compulsory motor vehicle liability insurance law to said Rubicus by the American Motorists Insurance Company, hereinafter referred to as the company.  The present suit in equity was brought in the Superior Court, by the plaintiff in the action at law, against Flanagan, Rubicus and the company to reach and apply the proceeds of the policy of insurance to the payment of the judgment.  G. L. (Ter. Ed.) c. 175, § 113; c. 214, § 3 (10).

The case was referred to a master.  A decree was entered that the bill be taken pro confesso against the defendants Flanagan and Rubicus.  The master filed a report to which were appended objections of the defendant company.  An interlocutory decree was entered overruling the exceptions and confirming the report, and a final decree was entered ordering the company to pay to the plaintiff the amount of the judgment in the action at law with interest and costs. The company appealed from the interlocutory decree and from the final decree.

The liability insurance policy issued to Rubicus with respect to the automobile owned by him conformed to the statutory requirement that it cover "any person responsible for the operation of the insured's motor vehicle with his express or implied consent."  G. L. (Ter. Ed.) c. 90, § 34A, as appearing in St. 1935, c. 459, § 2.  G. L. (Ter. Ed.) c. 175, § 113A.  *O'Roak* v. *Lloyds Casualty Co.* 285 Mass. 532.  The only matter of fact in controversy between the plaintiff and the company in the present case is whether Flanagan was so "responsible" with the "express or im-

plied consent" of Rubicus. In the decision of this issue of fact the provisions of G. L. (Ter. Ed.) c. 231, § 85C, added by St. 1937, c. 439, are applicable, that in "any suit in equity under section one hundred and thirteen of chapter one hundred and seventy-five and clause (10) of section three of chapter two hundred and fourteen to reach and apply the proceeds of any motor vehicle liability policy, as defined in section thirty-four A of chapter ninety, by a judgment creditor in any action to recover damages for bodily injuries . . . arising out of an accident or collision in which a motor vehicle . . . was involved . . . it shall be presumed that at the time of such accident or collision such vehicle was being operated, maintained, controlled or used with the express or implied consent of the named person insured in such policy . . . and the absence of such consent shall be an affirmative defence to be set up in the answer and proved by the defendant." This "affirmative defence" was set up by the company in its answer. The matter for decision is whether on the facts found by the master this "affirmative defence" has been "proved" by the company.

The master in his report states the subsidiary facts found by him, and following such statement states that, in "accordance with the facts hereinabove found and set forth, I find that while at the time of the accident . . . the automobile owned by the defendant Rubicus and operated by the defendant Flanagan . . . was not being operated or used with the express consent of the defendant Rubicus, the defendant company has not sustained the burden of proving that at the time of the accident in question said automobile was not being operated by the defendant Flanagan with the implied consent of the defendant Rubicus. Consequently, in accordance with the facts hereinabove found and set forth and the presumption provided for in the General Laws of the Commonwealth of Massachusetts, Chapter 231, Section 85C thereof, I find that at the time of the accident in question the automobile in question was being operated, maintained, controlled and used with the implied consent of the defendant Rubicus, the person named as the assured

in the policy of insurance issued by the defendant company."

Where, as here, a master's report contains findings in the nature of ultimate findings or conclusions based solely on subsidiary findings, "it was the duty of the judge to draw proper inferences from the findings unaffected by the conclusions of the master, and it is our duty to draw such inferences unaffected by the conclusions of the master or those of the judge." *Robinson* v. *Pero*, 272 Mass. 482, 484. "We have before us all the subsidiary facts that were found by the master, and it is our duty to draw such inferences as, in our opinion, are proper." *Albano* v. *Puopolo*, 309 Mass. 501, 507.

The master's report contains the following findings of subsidiary facts: "For some time prior to and in July, 1937, the defendant Rubicus lived in West Hanover, Massachusetts, and in his home there dwelt with him his wife, his son, his married daughter and her husband, the defendant Flanagan. In July, 1937, the defendant Rubicus purchased . . . [an] automobile and immediately thereafter arranged to have it duly registered for operation . . . . The defendant Rubicus did not, either at the time of his acquisition of said automobile or subsequent thereto, know how to operate said car and he never did operate it. The automobile was garaged at the Rubicus home in West Hanover and the keys for said car were always left in the automobile or in the kitchen of the Rubicus house. Rubicus gave express permission to his son and to his daughter to operate the car whenever they or either of them should desire and each of them did drive the car frequently. He never gave express permission to his son-in-law, the defendant Flanagan, to operate the car but, on the other hand, he never expressly forbade said Flanagan to drive it."

"During the period beginning with the time of the acquisition of the automobile by the defendant Rubicus and for the balance of the year 1937 the defendant Flanagan was not employed and spent a good deal of time at the Rubicus home in West Hanover. Throughout this period his relationship with his father-in-law and the rest of the

family was cordial. During this period his wife, Rubicus' daughter, was pregnant and by December, when the birth of her child was expected shortly, she had practically ceased to drive the automobile. On at least several occasions during the several weeks preceding Christmas, 1937, the defendant Flanagan had driven the automobile away from the Rubicus' home for the purpose of going to a nearby store which was about a drive of a minute or two away to make purchases for his own account and on those occasions the defendant Rubicus was either at his home or in the garden outside of the house when Flanagan drove away. There was no evidence that Rubicus actually saw Flanagan drive the car on said occasions.''

"On Christmas morning, 1937, Rubicus' son, who worked as a bartender in the Lithuanian Club in West Hanover, drove the car in question from the Rubicus home to the club where he parked it outside leaving the keys in the switch. The defendant Flanagan accompanied the son to the club and upon his arrival at the club went inside and spent some time there. At about two o'clock in the afternoon the defendant Flanagan came out of the club, stepped into the car in question and drove it away. Later the son missed the car and came to the conclusion that Flanagan had it. The defendant Rubicus had no knowledge of the fact that Flanagan had taken the car until the son informed his father of that fact upon his return home from work at about midnight. . . . Unknown to the defendant Rubicus and any others of the family, the defendant Flanagan while driving the car in question was involved in an accident during the evening of Christmas Day, 1937, while driving on the Circumferential Highway, so called, in Canton, Massachusetts, as a result of which accident the plaintiff was injured.''

Upon the subsidiary facts found by the master, Flanagan at the time of the accident was actually operating the automobile owned by Rubicus. But the "express or implied consent" of Rubicus that was essential to liability of the company in this suit did not relate to such actual operation but related rather to the responsibility of Flanagan at that time for the operation of the automobile. The words

"express or implied consent" in the statute and the insurance policy conforming thereto "primarily modify not the word 'operation' but the word 'responsible.' . . . They imply a possession of the motor vehicle with consent of the owner and responsibility to him. . . . Responsibility for operation of the motor vehicle accompanying possession conferred by the owner is the test, not whether the particular operation was with the express or implied consent of the owner." *O'Roak* v. *Lloyds Casualty Co.* 285 Mass. 532, 536, 538. The statute "requires only that the insured consent to responsibility on the part of the person, against whom judgment is obtained, for the operation of the automobile somewhere, and that the judgment be based upon an operation or use of the automobile 'upon the ways of the commonwealth.' " *Buckley* v. *Aetna Life Ins. Co.* 297 Mass. 395, 397.

The burden of proving, as an "affirmative defence," that Flanagan was not "responsible for the operation" of the automobile owned by Rubicus "with his express or implied consent" rested upon the company by reason of G. L. (Ter. Ed.) c. 231, § 85C, added to said chapter by St. 1937, c. 439. Most of the cases in which the issue of such consent has been considered were decided before the burden of proof upon this issue was shifted from the plaintiff to the insurer. In the present suit — unlike those cases — it was not incumbent upon the plaintiff to prove, as a part of her case, the existence of such consent, but rather it was incumbent upon the company to prove the nonexistence thereof as a bar to recovery by the plaintiff.

Upon the subsidiary facts found by the master above set forth, there was no "express . . . consent" by Rubicus that at the time of the accident Flanagan should have possession of the automobile owned by Rubicus and responsibility to him for its operation. To this extent the "affirmative defence" of lack of consent by the owner of the automobile set up by the answer of the company was proved. But such proof was not a bar to recovery by the plaintiff in this suit, unless there was also proof that there was no "implied consent" by Rubicus to possession

of the automobile by Flanagan with responsibility for its operation to Rubicus. Upon the subsidiary facts and proper inferences therefrom the nonexistence of such "implied consent" was not proved.

The situation at the home of Rubicus, as described in the master's report, even if not warranting an inference of implied consent by him to possession by Flanagan of the automobile with responsibility to Rubicus for its operation, was not inconsistent with the existence of such consent. The cordial relations existing among the family of Rubicus, the presence at his home of his daughter, the wife of Flanagan, in an advanced stage of pregnancy and the presence there "a good deal of time" of Flanagan, who was not employed, and the apparent lack of any person other than Flanagan available to operate the automobile when the son of Rubicus was at work away from the home, rendered it, at least, not unnatural that Rubicus should contemplate that Flanagan would operate the automobile and should impliedly consent that Flanagan have possession thereof for this purpose. Moreover, it is specifically found that Rubicus "never expressly forbade said Flanagan to drive it" and that the "automobile was garaged at the Rubicus home . . . and the keys for said car were always left in the automobile or in the kitchen of the Rubicus house." Apparently Flanagan had the opportunity to take possession of the automobile for the purpose of operating it, and it does not appear that Rubicus did not know that Flanagan had this opportunity or that he placed any impediment in the way of Flanagan's availing himself of this opportunity. See *Dickinson* v. *Great American Indemnity Co.* 296 Mass. 368, 371. Furthermore, Flanagan on several occasions previous to the time of the accident had availed himself of the opportunity. He had operated the automobile on several occasions for his own purposes when Rubicus was at home, and, so far as appears, Rubicus may have seen Flanagan drive the automobile away from the home. There is no finding either way by the master upon this point. He merely states that there was no evidence that Rubicus "actually saw Flanagan drive the car on said occasions."

It is, however, specifically found that, though Rubicus "never gave express permission to his son-in-law . . . Flanagan, to operate the car . . . , he never expressly forbade said Flanagan to drive it." What has been said here is to some extent speculative, but on the subsidiary facts found and proper inferences therefrom the issue of a general implied consent of Rubicus to the possession of the automobile by Flanagan for the purpose of operating it is left in the field of conjecture. We cannot say as a matter of proof — not merely of conjecture — that it was more probable than not that Rubicus did not impliedly give such a general consent to Flanagan.

The company stands in no better position on the subsidiary facts found by the master with respect to the operation of the automobile on the day of the accident. If, as the subsidiary facts fail to negative, there was a general implied consent on the part of Rubicus to possession of the automobile by Flanagan for the purpose of operating it, the circumstances attending its use by the son of Rubicus on that day do not show that the operation of the automobile on that day by Flanagan was beyond the scope of a general implied consent of Rubicus to its possession by Flanagan for the purpose of operating it. Moreover, if, as is not negatived, Rubicus knew that his son was using the automobile to drive to his place of employment for the day and was accompanied by Flanagan for a day of pleasure, it would not be unnatural for Rubicus to contemplate that at some time in the day Flanagan might operate the automobile somewhere, and to consent impliedly to such operation. There is nothing in the subsidiary facts found with respect to the conduct of the son, who left "the keys in the switch" and when he "missed the car . . . came to the conclusion that Flanagan had it," to show that the son understood that his father had not impliedly consented to the operation of the automobile by Flanagan.

Further subsidiary facts found by the master are these: "The defendant Flanagan subsequent to the accident was arrested by the police of the town of Canton, and early on the following morning, December 26, 1937, at the request

of the Canton police the defendant Rubicus was interviewed by a State police officer. In answer to questions propounded by the officer, the defendant Rubicus informed the officer that his son-in-law, the defendant Flanagan, occasionally drove the automobile in question. He stated that he had not given him express permission so to do. The officer then asked, 'Was it all right for Flanagan to take the car?', and Rubicus replied 'Yes.' " Whatever the probative effect, if any, of these facts, they do not aid the company, and they are not needed to support the plaintiff's case. However these facts are regarded, the result is the same. Consequently we need not discuss the matter of their probative effect.

The "affirmative defence" that must be "proved" by the company is the negative on the issue of consent. Absence of evidence — or, as here, of facts found — sufficient to sustain the burden of proving the negative on an issue has the same effect as absence of evidence sufficient to sustain the burden of proving the affirmative on an issue. The party having the burden of proof fails. The decision of this case turns on the failure of the company to sustain the burden of proof placed upon it by G. L. (Ter. Ed.) c. 231, § 85C, added by St. 1937, c. 439. The fact that this statute provides also for a presumption of consent does not weaken the effect of the statutory provision relating to the burden of proof upon that issue. And the decision here made based upon burden of proof does not rest to any extent upon the existence of the statutory presumption. No further discussion of this statutory presumption is required.

The arguments of the company are addressed primarily to two of its objections to the master's report. One of the objections was to the master's giving any consideration to the question and answer previously set out in this opinion: Question: "Was it all right for Flanagan to take the car?" Answer: "Yes." It is clear from the report that the master gave no consideration to this question and answer in making any of his other subsidiary findings of fact. Whether or not the master gave improper consideration to this question and answer in his ultimate findings or conclusions is immaterial,

for this court reaches its conclusion unaffected by the ultimate findings or conclusions of the master. As already pointed out, this court reaches the same conclusion irrespective of the question and answer. A discussion of the weight, if any, that could properly be given to them is therefore unnecessary.

The other objection of the company to the master's report was to the master's giving any consideration to the statutory presumption created by G. L. (Ter. Ed.) c. 231, § 85C, added by St. 1937, c. 439. This objection was based upon the statement in the ultimate findings or conclusions of the master: "Consequently, in accordance with the facts hereinabove found and set forth and the presumption provided for in the General Laws of the Commonwealth of Massachusetts, Chapter 231, Section 85C thereof, I find that at the time of the accident in question the automobile in question was being operated, maintained, controlled and used with the implied consent of the defendant Rubicus, the person named as the assured in the policy of insurance issued by the defendant Company." It does not appear that the master gave any consideration to this statutory presumption in making any of his subsidiary findings. And since this court reaches its conclusion unaffected by the ultimate findings or conclusions of the master, it is immaterial whether he gave improper consideration to the statutory presumption in reaching his ultimate findings or conclusions. And, as already pointed out, this court reaches its conclusion without giving any weight to the statutory presumption.

It follows that the company has failed to prove the "affirmative defence" that Flanagan was not a "person responsible for the operation of the insured's motor vehicle with his express or implied consent" as a bar to recovery by the plaintiff in this suit. Whether or not there was technical error in overruling the exceptions of the company to the master's report and in confirming the report, the company was not harmed by the interlocutory decree to that effect. And the final decree was right.

*Interlocutory decree affirmed.*
*Final decree affirmed with costs.*