# Wayne Mahoney *vs.* American Automobile Insurance Company.

No. 12-P-163.

Plymouth. October 4, 2012. - June 3, 2013.

Present: Grasso, Fecteau, & Agnes, JJ.

Further appellate review granted, 466 Mass. 1106 (2013).

*Motor Vehicle,* Insurance, Entrustment. *Insurance,* Motor vehicle insurance, Coverage, Insurer's obligation to defend. *Indemnity. Contract,* Insurance, Indemnity. *Negligence,* Motor vehicle, Entrustment.

In a civil action seeking a judgment declaring that an insurer was contractually obligated, under a standard Massachusetts automobile insurance policy that it had issued, to indemnify a household member of its insureds in connection with a motor vehicle accident in which the plaintiff's vehicle was struck by a vehicle rented by the household member and operated by a third party to whom the household member had negligently entrusted it, the judge properly granted summary judgment in favor of the insurer, where the policy did not provide coverage to the household member because, at the time of the accident, the third party was not operating the rental vehicle with the consent of its owner, the rental company. [679-684] Agnes, J., dissenting.

Civil action commenced in the Superior Court Department on February 11, 2010.

The case was heard by *Richard J. Chin,* J., on motions for summary judgment.

*Merril S. Biscone,* of New York (*Pamela S. Gilman* with her) for the defendant.

*J. Michael Conley* for the plaintiff.

Fecteau, J. On appeal from the allowance of the defendant American Automobile Insurance Company's (AAIC) motion for summary judgment, the plaintiff, Wayne Mahoney, contends that a judge in the Superior Court erred in interpreting Part 5, the "Optional Bodily Injury to Others" provision (Part 5) of a standard Massachusetts automobile insurance policy (seventh

edition). Mahoney's complaint sought a declaration that AAIC is contractually obligated to indemnify Jennifer Hill, a household member of its insureds, Thomas and Sandra Joyce (the Joyces), in connection with a motor vehicle accident in which Mahoney's vehicle was struck by a vehicle rented by Hill and operated by Ellen Teague, to whom Hill had negligently entrusted it.

Acting on cross motions for summary judgment, the judge concluded that AAIC had no contractual obligation to indemnify Hill, because the plain language of Part 5 unambiguously provides that "this Part does not pay for the benefit of anyone using an auto without the consent of the owner." Relying on the reasoning in *Vergato* v. *Commercial Union Ins. Co.*, 50 Mass. App. Ct. 824 (2001) (*Vergato*), the judge determined that Part 5 did not provide coverage to Hill because at the time of the accident, Teague was not operating the rental vehicle with the consent of the rental company, Hertz Rental Corporation (Hertz). We agree with the judge's interpretation and affirm the judgment.

*Background.* The essential facts are not in dispute. On March 17, 2007, Teague, who was not licensed, was driving a car that Hill had rented from Hertz when Teague negligently crossed the center line and struck Mahoney's vehicle, seriously injuring him. In renting the car from Hertz, Hill listed only herself as an operator, and only Hill was authorized by Hertz to operate the rental car.

After the accident, Mahoney sued Teague for negligent operation and Hill for negligent entrustment. Hertz assumed the defense of both Teague and Hill, and the suit was settled by an agreement that included the tender by Hertz of its insurance policy limits of $20,000 and Mahoney's release of Hill and Teague from personal liability in the event of a judgment in excess of available insurance limits, including any available secondary liability insurance. In the settlement agreement Teague admitted, and Hill did not contest, liability for the accident. After an assessment of damages hearing, judgment entered in favor of Mahoney against Teague and Hill in the amount of $78,000.

At the time of the accident, Hill was a household member of the Joyces, the named insureds under a standard Massachusetts automobile insurance policy issued by AAIC. As part of their policy, the Joyces had selected additional coverage in the amount

of $250,000 per person under Part 5, "Optional Bodily Injury to Others," which states in pertinent part as follows:

> "Under this Part, we will pay damages to people injured or killed in accidents if you or a household member is legally responsible for the accident. We will also pay damages if someone else using your auto with your consent is legally responsible for the accident. The damages we will pay are the amounts the injured person is entitled to collect for bodily injury through a court judgment or settlement.

> "This Part is similar to Compulsory Bodily Injury to Others (Part 1). Like the Compulsory Part, this part pays for accidents, involving your auto in Massachusetts. *Also like the Compulsory Part, this Part does not pay for the benefit of anyone using an auto without the consent of the owner*" (emphasis supplied).[1]

*Discussion.* "In review of a grant of summary judgment, we proceed de novo upon the same record as did the motion judge. . . . We must determine whether all material facts and questions of law are resolved." *Suffolk Constr. Co.* v. *Illinois Union Ins. Co.*, 80 Mass. App. Ct. 90, 93 (2011). "The interpretation of an insurance contract is no different from the interpretation of any other contract, and we must construe the words of the policy in their usual and ordinary sense." *Hakim* v. *Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 280 (1997). "[W]e must ascertain 'the fair meaning of the language used, as applied to the subject matter.' " *Vergato*, 50 Mass. App. Ct. at 826-827, quoting from *Aetna Cas. & Sur. Co.* v. *Sullivan*, 33 Mass. App. Ct. 154, 156 (1992). In addition, where the "standard form automobile liability insurance policy . . . was approved by the Commissioner of Insurance . . . [and] is . . . controlled by the Division of Insurance . . . the rule of construction resolving ambiguities in a policy against the insurer is inapplicable." *Id.* at 826, quoting from *Aetna Cas. & Sur. Co.* v. *Sullivan, supra.*

---

[1] There is no dispute that the rental car does not fall within the policy definition of "Your Auto," as there is no suggestion that the rental car was a temporary substitute for either of the vehicles listed on the Joyces' coverage selections page that was out of normal use, or an additional automobile, such as a recreational vehicle.

AAIC argued below, and the judge agreed, that the outcome of this case is controlled by our decision in *Vergato, supra.* In *Vergato,* we considered the meaning of the same policy provision at issue in this case. There, the plaintiff owned a 1988 Ford Mustang, and her automobile insurance policy included Part 5 coverage for optional bodily injury to others. The plaintiff included her husband and three children as additional operators who were covered under the policy. When the plaintiff's vehicle was stolen, she rented a temporary replacement vehicle. In the rental agreement, she designated herself as the operator of the rental car but did not identify any other operators. However, the plaintiff permitted her children to drive the rental car and, as there relevant, she allowed her son to borrow the rental car and drive to a party. The son consumed alcohol at the party and later asked a friend, who had not been drinking, to drive the car. The friend lost control of the vehicle and struck a tree, injuring the plaintiff's son. The evidence was undisputed that neither the plaintiff's son nor his friend had the permission of the vehicle owner, the rental company, to drive the vehicle. We held that the term "owner" in Part 5 of the policy referred to the actual title holder, i.e., the rental company, and that Vergato's insurance company was under no obligation to indemnify the operator of the rental car since both the plaintiff's son and his friend had used the car without the permission of the rental company owner. *Id.* at 828-829.[2]

Mahoney contends that because the coverage sought here is for the benefit of Hill, who had consent from Hertz to operate the vehicle, and not for Teague, *Vergato* is inapplicable. We fail to discern a meaningful distinction between *Vergato* and this case. While it is undisputed that Hill, unlike Vergato's son and his friend, was authorized by Hertz, the owner, to operate the rental car, as in *Vergato,* any "use" of the rental car by Hill was circumscribed by her contract with Hertz. Had Hill been the owner of the vehicle and negligently entrusted it to Teague, we

[2]The fact that the rental vehicle in *Vergato* qualified as a substitute vehicle (under Part 5 coverage, as defined by Part 2[5][B]), and coverage was sought as "your auto," and not for the liability of a household member, such as Hill in the case at bar, does not require a different result, since neither Vergato's son nor his friend who operated the vehicle had the express or implied consent of the vehicle owner.

would view the question of the availability of Part 5 optional bodily injury insurance to indemnify Hill for her negligent entrustment of the vehicle to Teague quite differently. See *Barnstable County Mut. Fire Ins. Co.* v. *Lally*, 374 Mass. 602, 606 (1978) (" 'negligent entrustment' as a distinct and specific cause of action is not exclusive of, but, rather, is derived from the more general concepts of ownership, operation, and use of a motor vehicle"). See also 6B Appleman & Appleman, Insurance Law and Practice § 4316, at 343 (rev. ed. 1979) ("A person clearly could be 'using' an automobile without operating it personally"). Here, Hill did not contest liability for negligent entrustment in the settlement agreement arising out of Mahoney's underlying personal injury suit defended by Hertz, and a judgment against her issued on that theory. Hill thus became "legally responsible for the accident" by way of her negligent entrustment, which under different circumstances could trigger the duty of AAIC under Part 5 to indemnify Hill, a household member of the Joyces. However, on the facts of this case, where Hill's "use" of the rental vehicle, i.e., its entrustment to Teague, was without the consent of Hertz, and Teague's "use" of the vehicle was also without the consent of Hertz, optional bodily injury coverage under Part 5 does not provide indemnity for the benefit of Hill, because the Part 5 coverage "does not pay for the benefit of anyone using an auto with the consent of the owner."

Although not involving a rental car, *Hanover Ins. Co.* v. *Locke*, 35 Mass. App. Ct. 679 (1993), leads to the same interpretation of the scope of Part 5 coverage. There, a household member who operated the family automobile without the consent of his father, the owner and named insured, was at fault for a fatal accident. We held that the optional coverage under Part 5 of the policy was properly denied because the driver used the car without the owner's consent. *Id.* at 681. Similarly, in *Picard* v. *Thomas*, 60 Mass. App. Ct. 362, 372 (2004), we held that neither compulsory nor optional bodily injury coverage was available under a vehicle owner's policy for an accident in which the owner's daughter, a household member, had given permission to another to operate the vehicle, when the daughter did not have the permission of her father, the owner, to allow

another person to operate it. Because the operator did not have the owner's permission, express or implied, to operate the vehicle, the owner's policy was not required to provide coverage.

The factual posture here, involving Part 5 optional coverage and the unauthorized operation of a rental car, is unlike that in cases relied upon by Mahoney and the dissent interpreting the statutory duty of insurers, generally, to provide compulsory bodily injury coverage to persons "responsible for the operation of the insured's motor vehicle with his express or implied consent." G. L. c. 90, § 34A.[3] For example, *Hurley* v. *Flanagan*, 313 Mass. 567, 572 (1943), in which the operator's use of the insured's vehicle was found to be with the insured's implied consent, the Supreme Judicial Court explained the scope of this consent provision under the compulsory insurance provision of the statute as follows:

> "The words 'express or implied consent' in the statute and the insurance policy conforming thereto primarily modify not the word 'operation' but the word 'responsible.' . . . They imply a possession of the motor vehicle with consent of the owner and responsibility to him. . . . Responsibility for operation of the motor vehicle accompanying possession conferred by the owner is the test, not whether the particular operation was with the express or implied consent of the owner. The statute requires only that the insured consent to responsibility on the part of the person, against whom judgment is obtained, for the operation of the automobile somewhere, and that the judgment be based upon an operation or use of the automobile 'upon the ways of the commonwealth.' "

*Id.* at 571-572 (citations and quotations omitted). Cf. *Guzenfield* v. *Liberty Mut. Ins. Co.*, 286 Mass. 133, 136 (1934) ("The statutory language is appropriate and sufficiently inclusive to mean that if [an insured's] motor vehicle is present in use or operation on the ways of the Commonwealth with the owner's

---

[3]General Laws c. 90, § 34A, defines "motor vehicle liability policy" as "a policy of liability insurance which provides indemnity for or protection to the insured and any person responsible for the operation of the insured's motor vehicle with his express or implied consent against loss by reason of the liability to pay damages to others for bodily injuries . . . ."

consent by someone responsible to the owner, then, under the compulsory motor vehicle insurance law, the owner's consent to the immediate conduct of the user at the moment of an accident is immaterial").[4] See *Liberty Mut. Ins. Co.* v. *Tabor*, 407 Mass. 354, 360 (1990) (phrase "while using with permission" refers to question whether insured has been given "authority to operate" or "the right to possession" of automobile for specific purpose).

However, that consent becomes material when considered under the optional coverage of Part 5. "Section B [optional coverage] does not provide, as does Section A, that the word 'Assured' shall include any person 'responsible for' the 'operation' of the automobile with the 'express or implied consent' of the owner. It provides, instead, that the word 'Assured' shall include any person 'while legally using' the automobile, provided 'such use' is with the permission of the owner." *Blair* v. *Travelers Ins. Co.*, 291 Mass. 432, 436 (1935). While not involving the specific issue presented here, the court in *Flattery* v. *Gregory*, 397 Mass. 143, 150 (1986), observed, nonetheless, that "[w]e have said many times that the primary purpose of compulsory automobile liability insurance is protection of travelers on the highway. . . . That recognition has led us to treat similar policy provisions differently depending on whether they pertain to compulsory or to optional insurance." We see reason, therefore, for this difference in treatment of the term "consent" — there are public policy reasons to explain why compulsory insurance is required to cover the use of a vehicle on the roads by one permitted simply to possess it. On the other hand, we discern no such public policy concerns that compel such a broad view of "consent" when coverage is sought to indemnify an insured or household member for the "use" of a vehicle that is not owned by the insured when that "use" is without the consent of the owner. Therefore, we view the cases of *Boudreau* v. *Maryland Cas. Co.*, 287 Mass. 423, 425 (1934); *Dickinson* v. *Great Am.*

---

[4]In *Hanover Ins. Co.* v. *Fasching*, 52 Mass. App. Ct. 519, 521 n.3 (2001), a case involving compulsory insurance, this court noted that the statutory "language has been construed to mean that the liability of the insurer runs with the car to which the policy refers, so long as the owner has sanctioned the presence of the car on the public ways," quoting from *Liberty Mut. Ins. Co.* v. *Merchants Car Leasing Corp.*, 27 Mass. App. Ct. 1146, 1147 (1989).

*Indemn. Co.*, 296 Mass. 368, 372 (1937); and *Buckley* v. *Aetna Life Ins. Co.*, 297 Mass. 395, 397 (1937), as inapposite.

Here, unlike the facts in *Hurley* v. *Flanagan, supra,* no view of the circumstances can demonstrate that Hertz consented to the operation of the rental car by anyone other than Hill, and Hill's use, i.e., her entrustment to Teague, was clearly not permitted by Hertz. When Hill entrusted the rental car to Teague, negligently or otherwise, whose use of the car was without the consent of the owner, Hill's use was thus also without the "consent of the owner," and therefore Mahoney had no reasonable prospect of proving that the policy covered a claim against Hill for negligent entrustment. As a matter of law, AAIC was entitled to judgment and its motion for summary judgment was properly allowed.

*Judgment affirmed.*

AGNES, J. (dissenting). Does an insured have a right to indemnification under her parents' automobile liability policy for her negligent entrustment of a rental vehicle to an unauthorized operator who causes a collision? The majority says "no" because Part 5 of the policy, entitled "Optional Bodily Injury to Others" (Part 5), requires that the particular operation of the vehicle must be "with the consent of the owner." However, use with the "permission of the owner," a phrase appearing in Part 1 of the policy governing compulsory insurance for bodily injury to others, has been interpreted consistently to require no more than that the insured was authorized by the owner to use the vehicle. In this case, the insured was authorized by Hertz Rental Corporation (Hertz) to use the rental car, and thus her negligence in allowing an unauthorized person to operate it is not a bar to her indemnification. Accordingly, I respectfully dissent.

1. *Additional background.* There is no dispute that at the time of the injuries suffered by the plaintiff, Wayne Mahoney, a standard Massachusetts automobile insurance policy approved by the Commissioner of Insurance and issued by American Automobile Insurance Company (AAIC) to Thomas and Sandra

Joyce (Joyces) was in effect. It is also undisputed that the Joyces selected optional coverage under Part 5 of the policy, which states in part as follows:

> "Under this Part, we will pay damages to people injured or killed in accidents if you or a household member is legally responsible for the accident. We will also pay damages if someone else using your auto with your consent is legally responsible for the accident. The damages we will pay are the amounts the injured person is entitled to collect for bodily injury through a court judgment or settlement.

> "This Part is similar to Compulsory Bodily Injury to Others (Part 1). Like the Compulsory Part, this Part pays for accidents involving your auto in Massachusetts. Also like the Compulsory Part, this Part does not pay for the benefit of anyone using an auto without the consent of the owner."[1]

At all relevant times, Jennifer Hill was a member of the Joyces' household. Hill was "legally responsible for the accident" within the meaning of Part 5 because a judgment entered against her in a personal injury action brought by Mahoney served as conclusive evidence that she acted negligently in entrusting the rental car to Ellen Teague and that Hill's negligence was a substantial contributing cause of the collision with Mahoney's vehicle.[2] Although the second sentence of Part 5, first par., states that "this Part pays for accidents involving your auto," coverage under Part 5 is broader than coverage under Part 1 in the sense that it is not limited to accidents involving the insured's automobile. See, e.g., *Massachusetts Insurers*

---

[1] Hill makes no claim that she is entitled to indemnification under Part 1 of the standard policy, governing compulsory coverage, which specifically provides that "[w]e will pay *only* if you or someone else using your auto with your consent is legally responsible for the accident" (emphasis added). See G. L. c. 90, § 34A. In this case, the car rented by Hill does not fit within the policy's definition of "your auto" because it was not a vehicle listed on the coverage selection page nor a "temporary" or "permanent" substitute vehicle as those terms are defined in the policy. Indeed, the judge in this case found that Hill "rented the [car] for purposes of leisure and not for purposes of a replacement vehicle that she owned." See *Hanover Ins. Co. v. Fasching*, 52 Mass. App. Ct. 519, 522-524 (2001).

[2] The judgment entered following a settlement agreement to which Hill was a party.

*Insolvency Fund* v. *Safety Ins. Co.*, 439 Mass. 309, 314 n.8 (2003) (explaining Part 5 coverage included insured's operation of rental truck). See also *Gleed* v. *Aetna Cas. & Sur. Co.*, 418 Mass. 503, 509 (1994).[3]

2. *Discussion.* a. *Consent to use.* In a number of cases, the Supreme Judicial Court has reasoned that "[r]esponsibility for operation of the motor vehicle accompanying possession conferred by the owner is the test [for indemnification], not whether the particular operation was with the express or implied consent of the owner." *O'Roak* v. *Lloyds Cas. Co.*, 285 Mass. 532, 538 (1934). Accord *Hurley* v. *Flanagan*, 313 Mass. 567, 571-572 (1943). This interpretation of "consent of the owner" is sometimes referred to as the "initial permission rule,"[4] and is illustrated by *Boudreau* v. *Maryland Cas. Co.*, 287 Mass. 423, 426 (1934), a case on which Mahoney specifically relies.

In *Boudreau*, Blanche Kelley had given the use of her car to her son and another person named Dwyer. In doing so she expressly instructed Dwyer, who held a driver's license, not to permit her son, a minor who was unlicensed, to drive. Dwyer nevertheless allowed her son to drive the car. While Dwyer was riding in the back seat and Kelley's son was driving, the son struck another vehicle, injuring the plaintiffs and causing property damage to their vehicle. The plaintiffs sought to require Kelley's insurer to pay the damages they recovered against Dwyer. In opposing the plaintiffs' claims, the insurer maintained that Dwyer was not responsible for the operation of the vehicle with the insured's consent because he disobeyed the express instruc-

---

[3]The rental car operated by Teague does not fall within the definition of "your auto" under the policy in question, see note 1, *supra*.

[4]The rule is explained by the Minnesota Supreme Court as follows: "[W]hen permission to use a vehicle is initially given, subsequent use short of actual conversion or theft remains permissive within the meaning of the omnibus clause, even if such use was not within the contemplation of the parties or was outside any limitations placed upon the initial grant of permission." *Milbank Mut. Ins. Co.* v. *United States. Fid. & Guar. Co.*, 332 N.W.2d 160, 162 (Minn. 1983). See *Liberty Mut. Ins. Co.* v. *Thomas*, 333 Ark. 655, 661 (1998) ("Here, [the driver] had initial permission to use the rental car, and his deviation in operation was immaterial"). See also *Christensen* v. *Milbank Ins. Co.*, 643 N.W.2d 639 (Minn. Ct. App. 2002) (applying rule in context of bailment). See generally New Appleman on Insurance § 63.06[7] (2012); 8 Couch, Insurance §§ 111.43 & 113.8 (3d ed. 2005), and cases cited.

tion of the owner not to let her son drive. In rejecting this argument, the Supreme Judicial Court noted:

> "In the present case the responsibility for the operation of the automobile was placed upon Dwyer by the owner. 'His disobedience did not destroy his responsibility.' That responsibility continued and was existent at the time the plaintiffs received their injuries. Under a policy issued pursuant to the compulsory motor vehicle insurance law, it is the existence of the responsibility for the operation of a motor vehicle, not the authority for the particular operation at the time of an accident, which fixes the insurer's liability to indemnify a person other than the owner for the consequences of negligent operation."

*Id.* at 426, quoting from *Guzenfield* v. *Liberty Mut. Ins. Co.*, 286 Mass. 133, 137 (1934).[5]

---

[5] The same reasoning was applied in *Moschella* v. *Kilderry*, 290 Mass. 62, 66 (1935), where the court held that under the consent-to-use requirement of G. L. c. 90, § 34A, the insurer of the owner-bailor of a vehicle which caused a collision was liable to pay the damages obtained by the injured party against the bailee but not against another unauthorized operator to whom the bailee had given permission to use the automobile. The court explained that the bailee (the equivalent to Hill in the present case) came within the scope of the consent-to-use provision (even though he had no authority to give the vehicle to anyone else) because he had been given the right to possess the automobile by the owner. *Ibid.* Accord *Johnson* v. *O'Lalor*, 279 Mass. 10, 12 (1932) ("[T]he judge found and ruled that Walter F. Fenton 'at the time of the accident was a person responsible for the operation of the motor vehicle of Charles L. Fenton, with the express or implied consent of Charles L. Fenton, and that if the plaintiff had obtained a judgment against Walter F. Fenton the said insurance policy would have been security for the payment of such judgment' "); *Blair* v. *Travelers Ins. Co.*, 288 Mass. 285, 290 (1934) (court noted that in view of evidence that employee who had owner's permission to take owner's car home and on following day drive to Worcester to show it to prospective buyer operated it "with the express or implied consent" of the owner even though employee used vehicle for his convenience and allowed friend to drive it, who then caused a fatal accident); *Dickinson* v. *Great Am. Indemn. Co.*, 296 Mass. 368, 372 (1937) ("If an insured owner of an automobile, expressly or by implication, gives his consent to another to take it upon the highway and there operate it, the right of the operator to indemnity from consequent loss exists even though the vehicle be operated in a manner, or by persons, or at times and places not authorized or even if such uses be forbidden by the owner"); *White* v. *Standard Acc. Ins. Co.*, 302 Mass. 474, 477 (1939) (describing principle as well settled that "a breach of the terms of a bailment of an automobile by the bailee does not deprive him of his respons-

b. *Compulsory and optional coverage*. Compulsory coverage, unlike optional coverage, is mandatory, see G. L. c. 90, § 34A, and is designed primarily to serve a public purpose, namely, to protect innocent travelers on our roadways, in addition to providing protection to the insured. See *Metropolitan Property & Cas. Ins. Co.* v. *Santos*, 55 Mass. App. Ct. 789, 797 (2002), and cases cited. See also G. L. c. 231, § 85C. In some respects, compulsory coverage is broader than optional coverage, but the converse is also sometimes true. See *Transamerica Ins. Co.* v. *Norfolk & Dedham Mut. Fire Ins. Co.*, 361 Mass. 144, 147 (1972).

The majority builds the foundation for its view that virtually identical language found in Part 1 and Part 5 of the policy should be read differently by quoting language from *Flattery* v. *Gregory*, 397 Mass. 143, 150 (1986), out of context. In *Flattery*, the Supreme Judicial Court held that the plaintiff, an injured motorist whose vehicle was struck by a vehicle operated and owned by the defendant, was the intended beneficiary of a contract between the defendant and his insurance agent, who had failed to honor his promise to obtain optional liability insurance coverage for the defendant in the amount of $100,000 per person and $300,000 per accident. As a result, at the time of the accident the defendant had only compulsory coverage in the amount of $20,000 per person and $40,000 per accident. The plaintiff recovered a judgment against the defendant in the amount of $118,181.99. The majority, *ante* at , quotes this excerpt from *Flattery*:

> "We have said many times that the primary purpose of compulsory automobile liability insurance is protection of travelers on the highway. . . . That recognition has led us to treat similar policy provisions differently depending on whether they pertain to compulsory or to optional insurance."

ibility to the owner or deny him the benefit of the indemnity provided in a compulsory liability policy issued in accordance with G. L. [Ter. Ed.] c. 90, § 34A"). In short, "the owner's consent to the immediate conduct of the user at the moment of an accident is immaterial." *Guzenfield* v. *Liberty Mut. Ins. Co.*, 286 Mass. at 136.

397 Mass. at 150. However, the remainder of that paragraph reads as follows:

> "But the fact that the Legislature's purpose in enacting the compulsory motor vehicle insurance law is to protect travelers does not warrant the conclusion urged on us by the defendant that '*the* purpose of non-compulsory coverage is to protect insureds' (emphasis added). General Laws c. 175, § 113 (1984 ed.), gives an injured highway traveler who has recovered a judgment against the party responsible for his injuries the right to collect directly from the tortfeasor's insurer the amount of the judgment up to the limits of the tortfeasor's compulsory and optional insurance. See *Blair* v. *Travelers Ins. Co.*, 291 Mass. 432, 435-436 (1935). *That provision displays the Legislature's view that injured highway travelers are intended beneficiaries of optional automobile liability insurance*" (emphasis added).

*Ibid. Flattery* thus supports the view that notwithstanding differences between compulsory and optional coverage in automobile insurance policies, the public policy of the Commonwealth, which favors a broad reading of the terms of compulsory coverage under Part 1 in order "to protect travelers on the highway from injury by motor vehicles," see *Dickinson* v. *Great Am. Indemn. Co.*, 296 Mass. 368, 372 (1937), applies to comparable terms defining optional coverage under Part 5.[6]

---

[6]Cases in which indemnification was sought but not ordered with respect to optional coverage involve restrictions in that coverage that are not present in this case. See *Kneeland* v. *Bernardi*, 317 Mass. 517, 519-520 (1945) (defendant received permission to use insured's automobile to seek employment in Lowell, but instead drove elsewhere and then allowed unlicensed driver to operate vehicle; she in turn operated it in negligent manner and collided with another vehicle causing personal injury and property damage to plaintiffs; court explained that defendant was not covered under optional part of insured's automobile liability policy because term "insured" was therein defined as "any person while using the [insured's] motor vehicle . . . provided . . . the *actual use* is with the permission of named insured" [emphasis added]); *Drescher* v. *Travelers Ins. Co.*, 359 Mass. 458, 459 (1971) ("The policy of insurance issued by the defendant to [the owner] provides in pertinent part: '(a) With respect to the insurance under Coverages B and C, the unqualified word 'insured' includes (1) the named insured and . . . (2) any other person using the motor vehicle with the permission of the named insured . . . *provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission*' " [emphasis supplied]). See 8 Couch, Insurance § 111.32, at 111-57 to 111-59; *id.* at § 112.3, at 112-12 & n.22.

The compulsory coverage part of a Massachusetts automobile liability insurance policy must conform to G. L. c. 90, § 34A. To ensure that such policies sold in Massachusetts conform to the statutory requirements, insurers must submit them to the Commissioner of Insurance for approval. See G. L. c. 175, §§ 22A, 113A. However, with regard to optional coverage such as that contained in Part 5, Massachusetts law only requires the insurer to offer additional coverage of $15,000 per person and $40,000 per accident. See G. L. 175, § 113C. See also *Commerce Ins. Co.* v. *Koch*, 25 Mass. App. Ct. 383, 387 (1988).

The majority opinion rests on an artificial and unwarranted distinction between compulsory and optional insurance that ignores the actual terms of the policy. According to the majority, an operator uses a vehicle "with the express or implied permission" of the owner, for purposes of triggering compulsory coverage under Part 1 of the policy, so long as he has "authority to operate" or "the right to possession." See *ante* at , citing *Liberty Mut. Ins. Co.* v. *Tabor*, 407 Mass. 354, 360 (1990). However, the majority maintains that for optional coverage to apply at the time of the accident, the actual operation of the vehicle must conform specifically to the terms of the consent or permission of the owner. Yet, no such distinction was made in *Tabor*, where the Supreme Judicial Court held that the driver-renter of the vehicle operated it with the consent of the owner and was entitled to indemnification beyond the compulsory insurance limits even though she violated her contract with the rental company by operating the vehicle while under the influence of alcohol. *Id.* at 359-362.

There is no basis to read restrictions into a policy of insurance that are not there. See *White* v. *American Cas. Ins. Co.*, 53 Mass. App. Ct. 66, 68 (2001), quoting from 8 Couch, Insurance § 119.37 (3d ed. 1997) ("[t]he term 'use' must be understood in its most comprehensive sense"). We should assign the same meaning to words appearing in the Part 5 optional coverage section as we assign to comparable words in the Part 1 compulsory coverage section. See *Cohen* v. *Liberty Mut. Ins. Co.*, 41 Mass. App. Ct. 748, 755 n.6 (1996) ("Additional optional bodily injury coverage merely increases the potential amount an

injured party can recover while offering the same protection as compulsory coverage").[7]

c. *The "initial permission rule" governs the meaning of "consent" in Part 5.* In *Blair* v. *Travelers Ins. Co.*, 288 Mass 285, 290 (1934), the Supreme Judicial Court relied on the "initial permission rule," see note 4 and accompanying text, *supra*, in circumstances that are instructive. The court explained that the estates of Daniel Garvey and Henrietta Blair, respectively the party killed and the party injured in a motor vehicle collision as a result of the negligence of one Perreault, who was operating a motor vehicle owned by Toren which had been lent to Dion, could recover damages from Toren's insurer because Dion had Toren's authority to use the vehicle. Indemnification on behalf of Dion was proper, the court stated, even though his actual use was contrary to the instructions given to him by Toren. *Ibid.* The plaintiffs brought an equitable action against Toren's insurer and recovered a judgment of $8,535.41 plus costs. In reversing the judgment, the Supreme Judicial Court explained that the plaintiffs were entitled to collect up to the limits of the compulsory insurance law from Toren's insurer, but without evidence of the availability of optional coverage, the judgment could not stand. *Id.* at 290-291.

The following year, in *Blair* v. *Travelers Ins. Co.*, 291 Mass. 432 (1935) (*Blair II*), the Supreme Judicial Court revisited the case. On remand, it was determined that Toren did have optional coverage in an amount twice as great as his compulsory coverage. Optional coverage was available to the named "assured" and to "any other person" provided he or she was "legally using" the vehicle "with the permission of the named Assured." *Id.* at 435. The court explained that insofar as optional coverage goes beyond the limits of compulsory coverage "as to territory, amount, circumstances of operation, or other particulars, the obligation of the defendant is measured exclusively by the words of Section B." *Ibid.* In this regard, the court found that the term "assured" was defined quite differently in Part A of the policy (compulsory coverage) than in Part B of the policy (optional coverage).

[7]Indeed, in this case the policy specifically references the "compulsory" coverage under Part 1 in describing the coverage available under Part 5.

"Section B does not provide, as does Section A, that the word 'Assured' shall include any person 'responsible for' the 'operation' of the automobile with the 'express or implied consent' of the owner. It provides, instead, that the word 'Assured' shall include any person 'while legally using' the automobile, provided 'such use' is with the permission of the owner. Was Dion an 'Assured' within that definition? Toren had given no permission for a pleasure ride on Sunday evening, although he had not expressly forbidden it. Such a ride was not within the express or implied purposes of the bailment, nor incidental to them, but amounted to a conversion of the automobile."

*Id.* at 436. Since Dion met the definition of an "assured" for purposes of the compulsory part of the policy, the plaintiffs were entitled to recover up to the statutory limits, but because Dion did not meet the definition of an "assured" under the optional part of the policy, the plaintiffs could not access any of that additional coverage. *Id.* at 436-437. The logical implication of *Blair II* is that if, as in this case, the terms of the policy used to define the scope of optional coverage are essentially the same as those used to define the scope of compulsory coverage, the terms should receive the same interpretation from the court in both parts of the policy.

d. *Reasonable expectations.* This court's decision in *Commerce Ins. Co.* v. *Koch,* 25 Mass. App. Ct. 383, is also instructive. There, the defendant driver of a vehicle and the plaintiff passenger were both seventeen years old and unlicensed. They had been drinking alcohol and were traveling in the passenger's vehicle, which due to the driver's negligence rolled down an embankment and turned over, injuring the passenger. The vehicle was unregistered and uninsured. The question faced by the court was whether the passenger could recover damages under Part 5 of the motor vehicle liability policy issued by Commerce to the driver's father on the theory that the driver (like Hill in this case) was a "household member" and "legally responsible for the accident." *Id.* at 384. Part 5 there also included restrictive language that provided that if an insured was using a nonowned vehicle at the time of the accident, the "owner's auto insurance must pay its limits before we pay." *Ibid.* This court rejected the insurer's argument that the Part 5 language in question should

be interpreted to mean that if there was no insurance coverage on the nonowned vehicle, the insurer had no obligation to pay. *Id.* at 384-385. Of particular significance is the court's dicta that even if there was uncertainty about the meaning of language imposing a limitation on coverage under Part 5, because the terms used by the insurer to define the scope of optional coverage are not prescribed by the Commissioner of Insurance, "the insureds are still favored; this would follow from common sense considerations of equity and of the ability of insurers to spread the losses as well as to advocate and secure changes in the policy terms, if they are warranted." *Id.* at 388.

"It is common knowledge that protection against liability on the ground of negligence is the principal purpose of [motor vehicle liability] policies. . . . The object of the policy is protection against law suits and legal liability." *Miller* v. *United States Fid. & Guar. Co.*, 291 Mass. 445, 448 (1935). Certainly, as Mahoney argued in the case before us, when the Supreme Judicial Court has interpreted terminology in the Part 1 compulsory coverage section of the policy ("permission of the owner") to require no more than that the insured has the "authority to operate" or "the right to possess" the vehicle, see *Liberty Mut. Ins. Co.* v. *Tabor*, 407 Mass. at 360, and the Commissioner of Insurance approves a liability policy that uses the functional equivalent of this language in the Part 5 optional coverage section, we should consider this body of interpretive law part of the "objectively reasonable expectations" of the intended beneficiaries of the policy and honor it. *Commerce Ins. Co.* v. *Koch*, 25 Mass. App. Ct. at 388 n.11, quoting from Keeton, Insurance Law 351 (1971).

e. *Cases cited by the majority are distinguishable.* Despite superficial similarities, our decision in *Vergato* v. *Commercial Ins. Co.*, 50 Mass. App. Ct. 824 (2001), does not control the outcome of this case. *Vergato* also involved a rental car and the application of optional coverage for bodily injury to others under Part 5 of the policy.[8] There the named insured permitted

---

[8]The insurance policy considered in *Vergato* was the standard Massachusetts automobile insurance policy (sixth edition). The pertinent language in Part 5 of the policy in *Vergato* is identical to the language used in Part 5 of the policy in this case.

her son to drive a rental car even though he was not identified as an additional driver in the rental agreement. The son, in turn, asked a friend to drive for him; the friend lost control of the rental car and the son, who was a passenger, sustained injuries. The insurer denied coverage on the ground that the son's friend did not have the rental company's consent to drive the car. We concluded that the term "owner" used in the final sentence of Part 5, second par., referred to the actual title holder of the vehicle, i.e., the rental company. Based on this, we held that the insurer had no obligation to provide coverage for the injuries sustained by the insured's son. *Id.* at 829. The insured's son was an unauthorized driver who at no time had the consent of the rental company to use the rental car. If the court had concluded that coverage existed for the son under those circumstances, the insurer would have been forced to pay for the benefit of someone using the rental vehicle without the consent of the owner in contravention of the last sentence of the second paragraph of Part 5 optional coverage. On the other hand, recognition of Hill's right to indemnification does not force AAIC to pay damages for the benefit of someone who used the vehicle without the consent of Hertz, because Hill's negligent entrustment of the vehicle to Teague was not only a "use" of the vehicle[9] but, notwithstanding a violation of her bailment with Hertz, a use that was with the consent of Hertz. See *Hurley* v. *Flanagan*, 313 Mass. 567, 572 (1943) (indicating that test for whether vehicle was operated with consent of owner is based on whether individual had lawful possession of it and was responsible for operation as opposed to whether owner approved of particular operation). See also *Liberty Mut. Ins. Co.* v. *Tabor*, 407 Mass.

---

[9]This point is not disputed by the insurer. Although the final sentence of Part 5, second par., does have application to coverage under the first sentence of the first paragraph, see *Hanover Ins. Co.* v. *Locke*, 35 Mass. App. Ct. 679, 680-681 (1993), it is widely accepted that negligent entrustment is a form of "use." See *Barnstable County Mut. Fire Ins. Co.* v. *Lally*, 374 Mass. 602, 606 (1978) (" '[N]egligent entrustment' as a distinct and specific cause of action is not exclusive of, but, rather, is derived from the more general concepts of ownership, operation, and use of a motor vehicle"). See also *Picard* v. *Thomas*, 60 Mass. App. Ct. 362, 372 n.5 (2004). See generally *Rubins Contractors, Inc.* v. *Lumbermens Mut. Ins. Co.*, 821 F.2d 671, 675-676 (D.C. Cir. 1987); *Bankert* v. *Threshermen's Mut. Ins. Co.*, 105 Wis. 2d 438, 443 (Ct. App. 1981), aff'd, 110 Wis. 2d 469, 480 (1985).

at 360 (vehicle renter's "use" of automobile was within scope of rental company's permission, even while renter engaged in use of automobile prohibited by rental company).

The majority maintains that our decision in *Hanover Ins. Co. v. Locke*, 35 Mass. App. Ct. 679 (1993), supports its view that optional coverage is not available in this case. *Locke*, however, offers no support for the majority's view. There, the insured's son, who had been expressly forbidden to drive his father's automobile and specifically removed from the father's motor vehicle liability policy, took the father's car one evening without the knowledge or permission of his parents and allegedly killed another person in a hit and run accident. *Id.* at 680. In ruling that neither the father's compulsory nor optional coverage was available to the decedent's estate, we reasoned that the son at no time had his father's permission to operate the vehicle. *Id.* at 681-682. Here, unlike in *Locke*, Hill had the consent and permission of Hertz to operate the rental car.

The majority also maintains that our decision in *Picard* v. *Thomas*, 60 Mass. App. Ct. 362 (2004), supports the conclusion that optional coverage is not available in this case. *Picard*, however, simply represents an application of the principle in *Vergato*, *supra*. In *Picard*, the evidence was that David Pearlman leased an automobile for his daughter Samantha. She, in turn, allowed her friend Thomas to drive it while she was a passenger even though this was contrary to her father's instructions, and she knew Thomas was not licensed. The vehicle operated by Thomas collided with another vehicle, resulting in the death of one person and serious injuries to another. Lawsuits followed against Thomas, Samantha, and Pearlman. The court concluded there was sufficient evidence that Thomas operated the vehicle in a negligent manner and that Samantha was negligent in entrusting the vehicle to him to preclude summary judgment in their favor, but upheld summary judgment in favor of Pearlman because he played no role in the events. *Id.* at 365-370. With regard to questions of insurance coverage, the court held that Pearlman's insurer had no duty to defend or indemnify Thomas for any damages recovered against him in these actions because there was no evidence that Thomas operated the vehicle with the express or implied consent of Pearlman. *Id.* at 371.

However, the court noted that the insurer "does not deny that it is obligated to defend Samantha in this action." *Id.* at 372 n.5. The analysis in *Picard* thus undermines the reasoning of the majority: if you substitute Hill for Samantha, and Teague for Thomas, you have the case before us.

3. *Conclusion.* The public policy of Massachusetts, as reflected in cases such as *O'Roak* v. *Lloyds Cas. Co.,* 285 Mass. at 535-536; *Guzenfield* v. *Liberty Mut. Ins. Co.,* 286 Mass. at 136; *Boudreau* v. *Maryland Cas. Co.,* 287 Mass. at 425-426; and *Dickinson* v. *Great Am. Indemn. Co.,* 296 Mass. at 372, discussed above, is to interpret the omnibus clause of Part 1 of the standard motor vehicle liability policy broadly so that innocent travelers on our roadways have access to compulsory coverage when injured by a motorist using a vehicle with the authority of the owner. The "permission of the owner" clause in Part 1 of the policy requires only that the operator have authority to use the vehicle. The "consent of the owner" exclusion in Part 5 of the policy should likewise require no more than authority to use the vehicle. This is especially so considering that in Part 5, the standard policy includes this phrase: "This Part is similar to Compulsory Bodily Injury to others (Part 1)."

Massachusetts public policy indicates that terms like "permission" and "consent" to use a vehicle, in the absence of other restrictive language, should be read broadly because "optional bodily injury coverage merely increases the potential amount an injured party can recover while offering the same protection as compulsory coverage." *Cohen* v. *Liberty Mut. Ins. Co.,* 41 Mass. App. Ct. at 755 n.6. Under the reasoning applied by the majority in this case, if a person in Hill's position acted negligently and elected to drive a rented vehicle while drunk, she would be entitled to indemnification, but if such a person acted negligently by entrusting the rental vehicle to a designated driver who was not intoxicated, but who then caused an accident, while the insured rode in the vehicle as a passenger, the insured would not be entitled to indemnification, and an innocent party could be left without a complete remedy. Such a result is at odds with the principle enunciated in *Liberty Mut. Ins. Co.* v. *Tabor,* 407 Mass. at 358, that restrictions in automobile rental agreements do not have the effect of nullifying an automobile liability

policy's coverage of the insured for her negligence. Moreover, the majority's view finds no support in any of our precedents and is contrary to the observation by the Supreme Judicial Court in *Flattery* v. *Gregory*, 397 Mass. at 150, that the Legislature intended innocent travelers on the highway to be the beneficiaries of optional coverage no less than of compulsory coverage.